**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:                                                    CASE NO. 6:14-bk-01832-CCJ

BIEBERLE ENTERPRISES,                    CHAPTER 11

INC., <u>et al.</u>,                                         (Jointly Administered)


             Debtors.
_____/

<u>**DEBTORS' DISCLOSURE STATEMENT**</u>

Counsel for the Debtors:
L. William Porter III
Florida Bar No. 0116882
BOGIN, MUNNS & MUNNS, P.A.
2601 Technology Drive
Orlando, Florida 32804


**I.**        <u>**INTRODUCTION**</u>.

This Disclosure Statement is filed pursuant to the requirements of § 1125 of the

Bankruptcy Code in the above-styled Chapter 11 bankruptcy case (the "Bankruptcy Case") filed

by DARDA BIEBERLE and BIEBERLE ENTRPRISES, INC. (the "Debtors"). This Disclosure

Statement is intended to provide adequate information to enable holders of claims in the

Bankruptcy Case to make informed judgments about whether to vote to accept or reject the

Debtors' (joint) Plan of Reorganization (the "Plan"). The overall purpose of the Plan is to

restructure the Debtors' liabilities in a manner designed to maximize recoveries to all

stakeholders. The Debtors believe the Plan is reasonably calculated to lead to the best possible

outcome for all creditors in the shortest amount of time, and is preferable to all other alternatives,

including conversion of this Bankruptcy Case to a Bankruptcy Case under Chapter 7 of the

Bankruptcy Code or dismissal of this Bankruptcy Case.

**THIS DISCLOSURE STATEMENT AND ITS RELATED DOCUMENTS ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT THE PLAN.**

**THIS PRECEEDING INTRODUCTION AND FOLLOWING SUMMARY ARE QUALIFIED IN THEIR ENTIRETY BY THE REMAINING PORTIONS OF THIS DISCLOSURE STATEMENT AND THIS DISCLOSURE STATEMENT IN TURN IS QUALIFIED, IN ITS ENTIRETY, BY THE PLAN. THE PLAN IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT AND ANY HOLDER OF ANY CLAIM OR INTEREST SHOULD READ AND CONSIDER THE PLAN CAREFULLY IN LIGHT OF THIS DISCLOSURE STATEMENT IN MAKING AN INFORMED JUDGMENT ABOUT THE PLAN. IF THERE IS AN INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS.**

**ALL CAPITALIZED TERMS USED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE DEFINITIONS ASCRIBED TO THEM IN THE PLAN UNLESS OTHERWISE DEFINED HEREIN.**

**NO REPRESENTATION CONCERNING THE DEBTORS IS AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS MADE, WHICH ARE OTHER THAN AS CONTAINED HEREIN, SHOULD NOT BE RELIED UPON IN ARRIVING AT A DECISION ABOUT THE PLAN.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AUDIT. FOR THAT REASON, AS WELL AS THE COMPLEXITY OF THE DEBTORS' BUSINESS AND FINANCIAL AFFAIRS, AND THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES, AND PROJECTIONS WITH COMPLETE ACCURACY, THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH NFORMATION IS ACCURATE. THIS DISCLOSURE STATEMENT INCLUDES FORWARD LOOKING STATEMENTS BASED LARGELY ON THE DEBTORS' CURRENT EXPECTATIONS AND PROJECTIONS ABOUT FUTURE EVENTS AND FINANCIALTRENDS AND ARE SUBJECT TO A NUMBER OF RISKS, UNCERTAINTIES, AND ASSUMPTIONS.**
**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, CAUSES OF ACTION, AND OTHER ACTIONS, THE DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR**

**LIABILITY OR WAIVER, BUT RATHER AS A STATEMENT MADE IN
SETTLEMENT NEGOTIATIONS.**

    II.    <u>**GENERAL INFORMATION REGARDING THE DEBTORS
AND THE BANKRUPTCY CASE**</u>

    A.    <u>Description and History of the Debtors' Business.</u>  Debtor, Darda Bieberle, is employed full-time with UPS and earns income in that capacity.  In addition, Darda Bieberle owns and maintains real property in and around Central Florida.  The Debtor currently owns eight (8) residential units (homes or condo units) (collectively, the "Individual Properties") in Orange County, Florida.  Darda Bieberle is an individual debtor and has no employees.

    B.    Debtor, Bieberle Enterprises, Inc. (the "Corporate Debtor"), is Florida corporation formed in 2001 to own and maintain real property in and around Central Florida.  The Corporate Debtor currently owns sixteen (16) residential units (homes or condo units) (collectively, the "Corporate Properties;" collectively, with the Individual Properties, the "Properties") in Orange County, Florida, the purchases of which were financed by multiple lenders.

    C.    <u>Insiders and Management of the Debtors Before and During Bankruptcy</u>.  Darda Bieberle is the President and only officer of the Corporate Debtor.  Darda Bieberle will receive no distributions under the Plan.

    D.    <u>Events Leading to Chapter 11 Filing.</u>  The severe hit to the real estate market and economy since 2005 was the primary factor in leading to the instant petitions.  The Debtors have been actively attempting to negotiate loan modifications with the subject lenders that would bring the debt service owed monthly to the lenders to an amount that is workable so that the Debtors can retain the Properties, but the Debtors have only been partially successful in that regard.  Multiple foreclosure actions were filed against the Debtors prior to the instant petitions

being filed which forced the Debtors to pursue reorganization in bankruptcy.  Debtor, Darda Bieberle, also suffered the loss of a child, followed by a divorce which obviously impacted his life dramatically.

   E.    <u>Significant Events During the Bankruptcy Case</u>.  The Debtors have continued to negotiate modifications with various lenders and has made post-petition payments to the subject lenders.  Other than that, the Debtors have operated their business in the ordinary course and consistent with the Court's Order Authorizing Debtor−In−Possession to Operate Business (Docket No.: 7) entered in the Bieberle Enterprises, Inc. case, and the Order Authorizing Individual Debtor to Manage Financial Affairs (Docket No.: 35) entered in the individual case filed by Darda Bieberle.

   F.    <u>Projected Recovery of Avoidable Transfers.</u>    The Debtors are not aware of any avoidance actions.

   G.    <u>Claims Objections</u>.   Except to the extent that a Claim is already allowed pursuant to a final non-appealable Order, the Debtors reserve the right to object to Claims.    Therefore, even if your Claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your Claim is later filed and sustained.

   **III.    SUMMARY OF THE PLAN AND TREATMENT OF CLAIMS AND EQUITY  INTERESTS**

   A.    <u>The Plan - Generally</u>.    As required by the Bankruptcy Code, Claims asserted against and Interests in the Debtors are placed into "Classes" based upon the respective rights of the various Claim and Interest holders.  The Plan, attached hereto as **Exhibit "1,"** also states how each Class of Claims or Interests will be treated.  To the extent that the Plan alters the legal, equitable, or contractual rights of a particular Class, then that Class is considered "Impaired"

pursuant to § 1124 of the Bankruptcy Code. Likewise, if the terms of the Plan do not alter the legal, equitable, or contractual rights of a particular Class, then that Class is not "Impaired" pursuant to § 1124 of the Bankruptcy Code. Only Claims or Interests that are Impaired are entitled to vote in favor of or against the Plan.

      B.    <u>Classes of Claims and Interests.</u>  The Plan classifies Claims and Interests as follows:

      Class 1 - Secured Claim of Midland Bank Relating to Property at 2440 and 2442 Fielding Court, Orlando, Florida

      Class 2 - Secured Claim of Chase Bank Relating to Property at 2463 and 2465 Fielding Court, Orlando, Florida

      Class 3 - Secured Claim of Chase Bank Relating to Property at 2472 and 2474 Fielding Court, Orlando, Florida

      Class 4 - Secured Claim of Nationstar Bank Relating to Property at 4730 Southern Willow Lane, Orlando, Florida

      Class 5 - Secured Claim of Nationstar Bank Relating to Property at 4736 Southern Willow Lane, Orlando, Florida

      Class 6 - Secured Claim of Nationstar Bank Relating to Property at 4742 Southern Willow Lane, Orlando, Florida

      Class 7 - Secured Claim of Ocwen Bank Relating to Property at 4746 Southern Willow Lane, Orlando, Florida

      Class 8 - Secured Claim of Chase Bank Relating to Property at 4750 Southern Willow Lane, Orlando, Florida

      Class 9 - Secured Claim of Chase Bank Relating to Property at 4754 Southern Willow Lane, Orlando, Florida

      Class 10 - Secured Claim of Chase Bank Relating to Property at 2833 Bower Road, Winter Park, Florida

Class 11 - Secured Claim of Wells Fargo Bank Relating to Property at 2833 Bower Road, Winter Park, Florida

Class 12 - Secured Claim of Chase Bank Relating to Property at 129 Cornwall Road, Winter Park, Florida

Class 13 - Secured Claim of Wells Fargo Bank Relating to Property at 129 Cornwall Road, Winter Park, Florida

Class 14 - Secured Claim of BSI Relating to Property at 641 Roughbeard Road, Winter Park, Florida

Class 15 - Secured Claim of Chase Bank Relating to Property at 2940 Scarlet Road, Winter Park, Florida

Class 16 - Secured Claim of Wells Fargo Bank Relating to Property at 2940 Scarlet Road, Winter Park, Florida

Class 17 - Secured Claim of AHMSI Relating to Property at 222 Ranger Avenue, Winter Park, Florida

Class 18 - Secured Claim of Chase Bank Relating to Property at 2766 Cady Avenue, Winter Park, Florida

Class 19 - Secured Claim of Chase Bank Relating to Property at 1773 Walnut Avenue, Winter Park, Florida

Class 20 - Secured Claim of Wells Fargo Bank Relating to Property at 1773 Walnut Avenue, Winter Park, Florida

Class 21 - Secured Claim of Chase Bank Relating to Property at 1725 Aloma Avenue, Winter Park, Florida

Class 22 - Secured Claim of Chase Bank Relating to Property at 1820 Aloma Avenue, Winter Park, Florida

Class 23 - Secured Claim of Citibank Relating to Property at 3800 Sea Island Court, Orlando, Florida

Class 24 - Secured Claim of SES Relating to Property at 2618 Lafayette Avenue, Winter Park, Florida

Class 25 - Secured Claim of Chase Bank Relating to Property at 2001 Commerce Boulevard, Orlando, Florida

Class 26 - Secured Claim of SPS Relating to Property at 251 and 253 Concord Avenue, Casselberry, Florida

Class 27 - Secured Claim of Wells Fargo Bank Relating to Property at 3180 Pittman Road, Apopka, Florida

Class 28 - Secured Claim of Carrington Mortgage Relating to Property at 2606 Mandan Trail, Winter Park, Florida- ***Arrears Only***

Class 29 - Secured Claim of Carrington Mortgage Relating to Property at 2606 Mandan Trail, Winter Park, Florida- ***Principal***

Class 30 - Secured Claim of $5^{th}/3^{rd}$ Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida

Class 31 - Secured Claim of Wells Fargo Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida

Class 32 - Secured Claim of GreenTree Relating to Property at 2666 Fitzhugh Road, Winter Park, Florida

Class 33 - All Allowed Unsecured Claims.

Class 34 - Equity Interests in the Debtor, Bieberle Enterprises, Inc.

C.    <u>Impaired Classes</u>.    Based upon the treatment provided in the Plan, the following Classes of Claims are Impaired and therefore are entitled to vote to accept or reject the Plan: Classes 1-27, 32 and 33.

D.    <u>Treatment Afforded to Impaired Classes</u>.

1.    <u>Class 1 - Secured Claim of Midland Bank Relating to Property at 2440 and 2442 Fielding Court, Orlando, Florida.</u>

This loan from Midland Bank (the "Midland Loan") relates to property located at 2440 and 2442 Fielding Court, Orlando, Florida.  The obligor under the subject loan

documents (the "Midland Loan Documents") is Darda Bieberle, individually. Payments under the Midland Loan are current as of the time of filing of the instant Disclosure Statement. Debtors adopt under the Plan the Midland Loan Documents except as to the interest rate thereunder, which is currently at 10% per annum. Under the Plan, the Midland Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Midland Loan Documents beginning on the Effective Date of the Plan. Midland Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Midland Loan Documents between the Debtors and Midland Bank as existed pre-Petition.

     2.     <u>Class 2 - Secured Claim of Chase Bank Relating to Property at 2463 and 2465 Fielding Court, Orlando, Florida</u>

This loan from Chase Bank (the "First Chase Loan") relates to property located at 2463 and 2465 Fielding Court, Orlando, Florida. The obligor under the subject loan documents (the "First Chase Loan Documents") is Darda Bieberle, individually. Payments under the First Chase Loan are current as of the time of filing of the instant Disclosure Statement. Debtors adopt under the Plan the First Chase Loan Documents except as to the interest rate thereunder, which is currently at 7.125% per annum. Under the Plan, the First Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the First Chase Loan Documents beginning on the Effective Date of the Plan. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the First Chase Loan Documents between the Debtors and Chase Bank as existed pre-Petition.

3.    <u>Class 3 - Secured Claim of Chase Bank Relating to Property at 2472 and
2474 Fielding Court, Orlando, Florida</u>

This loan from Chase Bank (the "Second Chase Loan") relates to property located at 2472 and 2474 Fielding Court, Orlando, Florida.  The obligor under the subject loan documents (the "Second Chase Loan Documents") is Darda Bieberle, individually.  The Second Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Second Chase Loan Modification Agreement") dated in or about July, 2014.  Debtors reaffirm and readopt under the Plan the Second Chase Loan Documents as modified by the Second Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 7.00% per annum.  Under the Plan, the Second Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Second Chase Loan Documents, as modified by the Second Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Second Chase Loan Documents, as modified by the Second Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

4.    <u>Class 4 - Secured Claim of Nationstar Bank Relating to Property at 4730
Southern Willow Lane, Orlando, Florida</u>

This loan from Nationstar Bank (the "First Nationstar Loan") relates to property located at 4730 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "First Nationstar Loan Documents") is Bieberle Enterprises, Inc.  Payments under the First Nationstar Loan are current as of the time of filing of the

instant Disclosure Statement.  Debtors adopt under the Plan the First Nationstar Loan Documents except as to the interest rate thereunder, which is currently at 8.875% per annum.  Under the Plan, the First Nationstar Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the First Nationstar Loan Documents beginning on the Effective Date of the Plan.  Nationstar Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the First Nationstar Loan Documents between the Debtors and Nationstar Bank as existed pre-Petition.

5.      Class 5 - Secured Claim of Nationstar Bank Relating to Property at 4736 Southern Willow Lane, Orlando, Florida

This loan from Nationstar Bank (the "Second Nationstar Loan") relates to property located at 4736 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Second Nationstar Loan Documents") is Bieberle Enterprises, Inc.  Payments under the Second Nationstar Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Second Nationstar Loan Documents except as to the interest rate thereunder, which is currently at 8.875% per annum.  Under the Plan, the Second Nationstar Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Second Nationstar Loan Documents beginning on the Effective Date of the Plan. Nationstar Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Second Nationstar Loan Documents between the Debtors and Nationstar Bank as existed pre-Petition.

6.     Class 6 - Secured Claim of Nationstar Bank Relating to Property at 4742 Southern Willow Lane, Orlando, Florida

This loan from Nationstar Bank (the "Third Nationstar Loan") relates to property located at 4742 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Third Nationstar Loan Documents") is Bieberle Enterprises, Inc. Payments under the Third Nationstar Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Third Nationstar Loan Documents except as to the interest rate thereunder, which is currently at 8.875% per annum.  Under the Plan, the Third Nationstar Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Third Nationstar Loan Documents beginning on the Effective Date of the Plan.  Nationstar Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Third Nationstar Loan Documents between the Debtors and Nationstar Bank as existed pre-Petition.

7.     Class 7 - Secured Claim of Ocwen Bank Relating to Property at 4746 Southern Willow Lane, Orlando, Florida

This loan from Ocwen Bank (the "Ocwen Loan") relates to property located at 4746 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Ocwen Loan Documents") is Bieberle Enterprises, Inc.  The Ocwen Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Ocwen Loan Modification Agreement") dated in or about August, 2013.  Debtors reaffirm and readopt under the Plan the Ocwen Loan Documents as modified by the Ocwen Loan Modification Agreement except as to the interest rate thereunder, which is

currently at 7.00% per annum.  Under the Plan, the Ocwen Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Ocwen Loan Documents, as modified by the Ocwen Loan Modification Agreement, beginning on the Effective Date of the Plan.  Ocwen Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Ocwen Loan Documents, as modified by the Ocwen Loan Modification Agreement, between the Debtors and Ocwen Bank as existed pre-Petition.

       8.      <u>Class 8 - Secured Claim of Chase Bank Relating to Property at 4750 Southern Willow Lane, Orlando, Florida</u>

This loan from Chase Bank (the "Third Chase Loan") relates to property located at 4750 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Third Chase Loan Documents") is Bieberle Enterprises, Inc.  The Third Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Third Chase Loan Modification Agreement") dated in or about July, 2012.  Debtors reaffirm and readopt under the Plan the Third Chase Loan Documents as modified by the Third Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 4.25% per annum.  Under the Plan, the Third Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Third Chase Loan Documents, as modified by the Third Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Third Chase Loan Documents, as modified by the

Third Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

9. <u>Class 9 - Secured Claim of Chase Bank Relating to Property at 4754 Southern Willow Lane, Orlando, Florida</u>

This loan from Chase Bank (the "Fourth Chase Loan") relates to property located at 4754 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Fourth Chase Loan Documents") is Bieberle Enterprises, Inc. Payments under the Fourth Chase Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Fourth Chase Loan Documents except as to the interest rate thereunder, which is currently at 9.00% per annum.  Under the Plan, the Fourth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Fourth Chase Loan Documents beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Fourth Chase Loan Documents between the Debtors and  Chase Bank as existed pre-Petition.

10. <u>Class 10 - Secured Claim of Chase Bank Relating to Property at 2833 Bower Road, Winter Park, Florida</u>

This loan from Chase Bank (the "Fifth Chase Loan") relates to property located at 2833 Bower Road, Winter Park, Florida.   The obligor under the subject loan documents (the "Fifth Chase Loan Documents") is Bieberle Enterprises, Inc.  The Fifth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Fifth Chase Loan Modification Agreement") dated in or about

November, 2012.  Debtors reaffirm and readopt under the Plan the Fifth Chase Loan Documents as modified by the Fifth Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 9.00% per annum.  Under the Plan, the Fifth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Fifth Chase Loan Documents, as modified by the Fifth Chase Loan Modification Agreement, beginning on the Effective Date of the Plan. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Fifth Chase Loan Documents, as modified by the Fifth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

      11.   <u>Class 11 - Secured Claim of Wells Fargo Bank Relating to Property at 2833 Bower Road, Winter Park, Florida</u>

This loan from Wells Fargo Bank (the "First Wells Fargo Loan") relates to a second mortgage on the property located at 2833 Bower Road, Winter Park, Florida. The obligor under the subject loan documents (the "First Wells Fargo Loan Documents") is Bieberle Enterprises, Inc.  Payments under the First Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the First Wells Fargo Loan Documents except as to the interest rate thereunder, which is currently at 4.25% per annum.  Under the Plan, the First Wells Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the First Wells Fargo Loan Documents beginning on the Effective Date of the Plan.  Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the First

Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

      12.     <u>Class 12 - Secured Claim of Chase Bank Relating to Property at 129 Cornwall Road, Winter Park, Florida</u>

This loan from Chase Bank (the "Sixth Chase Loan") relates to property located at 129 Cornwall Road, Winter Park, Florida.  The obligor under the subject loan documents (the "Sixth Chase Loan Documents") is Bieberle Enterprises, Inc.  The Sixth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Sixth Chase Loan Modification Agreement") dated in or about January, 2014.  Debtors reaffirm and readopt under the Plan the Sixth Chase Loan Documents as modified by the Sixth Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 4.913% per annum.  Under the Plan, the Sixth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Sixth Chase Loan Documents, as modified by the Sixth Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Sixth Chase Loan Documents, as modified by the Sixth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

      13.     <u>Class 13 - Secured Claim of Wells Fargo Bank Relating to Property at 129 Cornwall Road, Winter Park, Florida</u>

This loan from Wells Fargo Bank (the "Second Wells Fargo Loan") relates to a second mortgage on the property located at 129 Cornwall Road, Winter Park, Florida.

The obligor under the subject loan documents (the "Second Wells Fargo Loan Documents") is Bieberle Enterprises, Inc. Payments under the Second Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement. Debtors adopt under the Plan the Second Wells Fargo Loan Documents except as to the interest rate thereunder, which is currently at 4.50% per annum. Under the Plan, the Second Wells Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Second Wells Fargo Loan Documents beginning on the Effective Date of the Plan. Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Second Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

14.    Class 14 - Secured Claim of BSI Relating to Property at 641 Roughbeard Road, Winter Park, Florida

This loan from BSI (the "BSI Loan") relates to a second mortgage on the property located at 641 Roughbeard Road, Winter Park, Florida. The obligor under the subject loan documents (the "BSI Loan Documents") is Bieberle Enterprises, Inc. Payments under the BSI Loan are delinquent and no modification agreement is in place. Under the Plan, the BSI Loan will be recapitalized and that recapitalized amount, which totals $293,090.68 pursuant to the Proof of Claim filed herein by BSI (Claim No. 3 in the Bieberle Enterprises, Inc. case), will be amortized over forty (40) years at 2.242% per annum, at a month payment of $925.32, beginning on the Effective Date.[1]  BSI shall

---

[1] A confirmation hearing has not yet been set in the case. For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the BSI Loan Documents between the Debtors and BSI as existed pre-Petition.

15.    Class 15 - Secured Claim of Chase Bank Relating to Property at 2940 Scarlet Road, Winter Park, Florida

This loan from Chase Bank (the "Seventh Chase Loan") relates to property located at 2940 Scarlet Road, Winter Park, Florida. The obligor under the subject loan documents (the "Seventh Chase Loan Documents") is Bieberle Enterprises, Inc. Payments under the Seventh Chase Loan are current as of the time of filing of the instant Disclosure Statement. Debtors adopt under the Plan the Seventh Chase Loan Documents except as to the interest rate thereunder, which is currently at 3.228% per annum. Under the Plan, the Seventh Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Seventh Chase Loan Documents beginning on the Effective Date of the Plan. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Seventh Chase Loan Documents between the Debtors and  Chase Bank as existed pre-Petition.

16.    Class 16 - Secured Claim of Wells Fargo Bank Relating to Property at 2940 Scarlet Road, Winter Park, Florida

This loan from Wells Fargo Bank (the "Third Wells Fargo Loan") relates to a second mortgage on the property located at 2940 Scarlet Road, Winter Park, Florida. The obligor under the subject loan documents (the "Third Wells Fargo Loan Documents") is Bieberle Enterprises, Inc.  Payments under the Third Wells Fargo Loan

are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt

under the Plan the Third Wells Fargo Loan Documents except as to the interest rate

thereunder, which is currently at 4.25% per annum.  Under the Plan, the Third Wells

Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which

shall be the rate governing the Third Wells Fargo Loan Documents beginning on the

Effective Date of the Plan.  Wells Fargo Bank shall retain any and all liens it has against

the aforesaid real property to the same extent, validity and priority provided in the Third

Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed

pre-Petition.

 17. <u>Class 17 - Secured Claim of AHMSI Relating to Property at 222 Ranger</u>
<u>Avenue, Winter Park, Florida</u>

 This loan from AHMSI (the "AHMSI Loan") relates to property located at 222

Ranger Avenue, Winter Park, Florida.  The obligor under the subject loan documents

(the "AHMSI Loan Documents"), and the party in whose name title to the subject

property currently rests, is Darda Bieberle's former spouse, Wendy Bieberle.  However,

under the Marital Settlement Agreement between the parties (the "MSA"), title to the

subject property passed to Darda Bieberle, and he has an interest in the subject property

that may be treated under the herein Plan.  In addition, it is Darda Bieberle who makes

the payments to AHMSI on a monthly basis.  The AHMSI Loan has been modified by

the parties pursuant to that certain Modification Agreement (the "AHMSI Loan

Modification Agreement") dated in or about June, 2014.  Debtors reaffirm and readopt

under the Plan the AHMSI Loan Documents as modified by the AHMSI Loan

Modification Agreement except that: (i) Bieberle Enterprises, Inc. shall be substituted in

as obligor under the AHMSI Loan Documents; (ii) Wendy Bieberle shall be released of any obligation relating to the AHMSI Loan; and (iii) the interest rate thereunder, which is currently at 7.70% per annum, shall, under the Plan, be modified and reduced to 2.242% per annum, which shall be the rate governing the AHMSI Loan Documents, as modified by the AHMSI Loan Modification Agreement, beginning on the Effective Date of the Plan. AHMSI shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the AHMSI Loan Documents, as modified by the AHMSI Loan Modification Agreement, between the Debtors and AHMSI as existed pre-Petition.

18. <u>Class 18 - Secured Claim of Chase Bank Relating to Property at 2766 Cady Avenue, Winter Park, Florida</u>

This loan from Chase Bank (the "Eighth Chase Loan") relates to property located at 2766 Cady Avenue, Winter Park, Florida. The obligor under the subject loan documents (the "Eighth Loan Documents") is Bieberle Enterprises, Inc. The Eighth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Eighth Chase Loan Modification Agreement") dated in or about February, 2013. Debtors reaffirm and readopt under the Plan the Eighth Chase Loan Documents as modified by the Eighth Chase Loan Modification Agreement, including rate of 2.242% per annum. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Eighth Chase Loan Documents, as modified by the Eighth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

19.    Class 19 - Secured Claim of Chase Bank Relating to Property at 1773 Walnut Avenue, Winter Park, Florida

This loan from Chase Bank (the "Ninth Chase Loan") relates to property located at 1773 Walnut Avenue, Winter Park, Florida.   The obligor under the subject loan documents (the "Ninth Chase Loan Documents") is Bieberle Enterprises, Inc.  Payments under the Ninth Chase Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Ninth Chase Loan Documents except as to the interest rate thereunder, which is currently at 7.75% per annum.  Under the Plan, the Ninth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Ninth Chase Loan Documents beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Ninth Chase Loan Documents between the Debtors and  Chase Bank as existed pre-Petition.

20.    Class 20 - Secured Claim of Wells Fargo Bank Relating to Property at 1773 Walnut Avenue, Winter Park, Florida

This loan from Wells Fargo Bank (the "Fourth Wells Fargo Loan") relates to a second mortgage on the property located at 1773 Walnut Avenue, Winter Park, Florida. The obligor under the subject loan documents (the "Fourth Wells Fargo Loan Documents") is Bieberle Enterprises, Inc.  Payments under the Fourth Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Fourth Wells Fargo Loan Documents except as to the interest rate thereunder, which is currently at 4.25% per annum.  Under the Plan, the Fourth Wells Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which

shall be the rate governing the Fourth Wells Fargo Loan Documents beginning on the Effective Date of the Plan.  Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Fourth Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

   21. <u>Class 21 - Secured Claim of Chase Bank Relating to Property at 1725 Aloma Avenue, Winter Park, Florida</u>

  This loan from Chase Bank (the "Tenth Chase Loan") relates to property located at 1725 Aloma Avenue, Winter Park, Florida.  The obligor under the subject loan documents (the "Tenth Chase Loan Documents") is Bieberle Enterprises, Inc.  The Tenth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Tenth Chase Loan Modification Agreement") dated in or about December, 2012.  Debtors reaffirm and readopt under the Plan the Tenth Chase Loan Documents as modified by the Tenth Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 6.50% per annum.  Under the Plan, the Tenth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Tenth Chase Loan Documents, as modified by the Tenth Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Tenth Chase Loan Documents, as modified by the Tenth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

22.    Class 22 - Secured Claim of Chase Bank Relating to Property at 1820 Aloma Avenue, Winter Park, Florida

This loan from Chase Bank (the "Eleventh Chase Loan") relates to property located at 1820 Aloma Avenue, Winter Park, Florida.  The obligor under the subject loan documents (the "Eleventh Chase Loan Documents") is Bieberle Enterprises, Inc.  The Eleventh Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Eleventh Chase Loan Modification Agreement") dated in or about January, 2013.  Debtors reaffirm and readopt under the Plan the Eleventh Chase Loan Documents as modified by the Eleventh Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 3.31% per annum.  Under the Plan, the Eleventh Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Eleventh Chase Loan Documents, as modified by the Eleventh Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Eleventh Chase Loan Documents, as modified by the Eleventh Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

23.    Class 23 - Secured Claim of Citibank Relating to Property at 3800 Sea Island Court, Orlando, Florida

This loan from Citibank (the "Citibank Loan") relates to property located at 3800 Sea Island Court, Orlando, Florida.  The obligor under the subject loan documents (the "Citibank Loan Documents") is Bieberle Enterprises, Inc.  The Citibank Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Citibank

Loan Modification Agreement") dated in or about December, 2012.  Debtors reaffirm and readopt under the Plan the Citibank Loan Documents as modified by the Citibank Loan Modification Agreement except as to the interest rate thereunder, which is currently at 4.25% per annum.  Under the Plan, the Citibank Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Citibank Loan Documents, as modified by the Citibank Loan Modification Agreement, beginning on the Effective Date of the Plan.  Citibank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Citibank Loan Documents, as modified by the Citibank Loan Modification Agreement, between the Debtors and Citibank as existed pre-Petition.

     24.    <u>Class 24 - Secured Claim of SES Relating to Property at 2618 Lafayette Avenue, Winter Park, Florida</u>

This loan from SES (the "SES Loan") relates to property located at 2618 Lafayette Avenue, Winter Park, Florida.  The obligor under the subject loan documents (the "SES Loan Documents") is Darda Bieberle, individually.  The SES Loan has been modified by the parties pursuant to that certain Modification Agreement (the "SES Loan Modification Agreement") dated in or about January, 2013.  Debtors reaffirm and readopt under the Plan the SES Loan Documents as modified by the SES Loan Modification Agreement except as to the interest rate thereunder, which is currently at 4.75% per annum.  Under the Plan, the SES Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the SES Loan Documents, as modified by the SES Loan Modification Agreement, beginning on the Effective Date of the Plan.  SES shall retain any and all liens it has against the aforesaid

real property to the same extent, validity and priority provided in the SES Loan Documents, as modified by the SES Loan Modification Agreement, between the Debtors and SES as existed pre-Petition.

25.    Class 25 - Secured Claim of Chase Bank Relating to Property at 2001 Commerce Boulevard, Orlando, Florida

This loan from Chase Bank (the "Twelfth Chase Loan") relates to property located at 2001 Commerce Boulevard, Orlando, Florida. The obligor under the subject loan documents (the "Twelfth Chase Loan Documents") is Bieberle Enterprises, Inc. The Twelfth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Twelfth Chase Loan Modification Agreement") dated in or about February, 2014. Debtors reaffirm and readopt under the Plan the Twelfth Chase Loan Documents as modified by the Twelfth Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 7.25% per annum. Under the Plan, the Twelfth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Twelfth Chase Loan Documents, as modified by the Twelfth Chase Loan Modification Agreement, beginning on the Effective Date of the Plan. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Twelfth Chase Loan Documents, as modified by the Twelfth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

26. <u>Class 26 - Secured Claim of SPS Relating to Property at 251 and 253 Concord Avenue, Casselberry, Florida</u>

This loan from SPS (the "SPS Loan") relates to property located at 251 and 253 Concord Avenue, Casselberry, Florida.  The obligor under the subject loan documents (the "SPS Loan Documents") is Darda Bieberle, individually.  Payments under the SPS Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the SPS Loan Documents except as to the interest rate thereunder, which is currently at 9.275% per annum.  Under the Plan, the SPS Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the SPS Loan Documents beginning on the Effective Date of the Plan.  SPS shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the SPS Loan Documents between the Debtors and SPS as existed pre-Petition.

27. <u>Class 27 - Secured Claim of Wells Fargo Bank Relating to Property at 3180 Pittman Road, Apopka, Florida</u>

This loan from Wells Fargo Bank (the "Fifth Wells Fargo Loan") relates to property located at 3180 Pittman Road, Apopka, Florida.  The obligor under the subject loan documents (the "Fifth Wells Fargo Loan Documents") is Darda Bieberle, individually.  Payments under the Fifth Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Fifth Wells Fargo Loan Documents except as to the interest rate thereunder, which is currently at 6.00% per annum.  Under the Plan, the Fifth Wells Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Fifth

Wells Fargo Loan Documents beginning on the Effective Date of the Plan.  Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Fifth Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

28.    <u>Class 28 - Secured Claim of Carrington Mortgage Relating to Property at 2606 Mandan Trail, Winter Park, Florida- **_Arrears Only_**</u>

This loan from Carrington Mortgage (the "Carrington Loan") relates to property located at 2606 Mandan Trail, Winter Park, Florida, which is the Debtor, Darda Bieberle's, homestead property.  The obligor under the subject loan documents (the "Carrington Loan Documents") is Darda Bieberle, individually.  Payments under the Carrington Loan are delinquent going back to November, 2011, and no modification agreement is in place.  The arrears under the Carrington Loan are estimated to be $65,000.00 (no Proof of Claim has yet been filed).  Under the Plan, said arrears will be amortized over five (5) years at the contract rate of interest of 3.125% per annum, at a month payment of $1,171.58 beginning on the Effective Date.[2]  Carrington shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Carrington Loan Documents between the Debtors and Carrington as existed pre-Petition.

---

[2] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

29.    <u>Class 29 - Secured Claim of Carrington Mortgage Relating to Property at 2606 Mandan Trail, Winter Park, Florida- **Principal**</u>

Payments under the Carrington Loan will resume on the Effective Date.[3]  All terms of the Carrington Loan Documents are adopted under the Plan.  Carrington shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Carrington Loan Documents between the Debtors and Carrington as existed pre-Petition.

30.    <u>Class 30 - Secured Claim of $5^{th}/3^{rd}$ Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida</u>

This loan from $5^{th}/3^{rd}$ Bank (the "$5^{th}/3^{rd}$ Loan") relates to a second mortgage on the property located at 2606 Mandan Trail, Winter Park, Florida.  The obligor under the subject loan documents (the "$5^{th}/3^{rd}$ Loan Documents") is Darda Bieberle, individually. Payments under the $5^{th}/3^{rd}$ Loan are current as of the time of filing of the instant Disclosure Statement.   Debtors adopt under the Plan the $5^{th}/3^{rd}$ Loan Documents. Fifth/Third Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the $5^{th}/3^{rd}$ Loan Documents between the Debtors and $5^{th}/3^{rd}$ Bank as existed pre-Petition.

31.    <u>Class 31 - Secured Claim of Wells Fargo Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida</u>

This loan from Wells Fargo Bank (the "Sixth Wells Fargo Loan") relates to a third mortgage on the property located at 2606 Mandan Trail, Winter Park, Florida.  The obligor under the subject loan documents (the "Sixth Wells Fargo Loan Documents") is

---

[3] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

Darda Bieberle, individually. Payments under the Sixth Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement. Debtors adopt under the Plan the Sixth Wells Fargo Loan Documents. Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Sixth Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

32. <u>Class 32 - Secured Claim of GreenTree Relating to Property at 2666 Fitzhugh Road, Winter Park, Florida</u>

This loan currently held by GreenTree Servicing (the "GreenTree Loan") relates to property located at 2666 Fitzhugh Road, Winter Park, Florida. The obligor under the subject loan documents (the "GreenTree Loan Documents"), and the party in whose name title to the subject property currently rests, is Darda Bieberle's mother, Henrietta Bieberle, who has since passed away. The property is the subject of a foreclosure proceeding in the case styled as: *Bank of America v. Unknown Spouses, Heirs claiming against Henrietta J. Bieberle, et al.*, Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, Case No. 2011-CA-017461-O. However, as an heir, Darda Bieberle has an interest in the subject property that may be treated under the herein Plan. Payments under the GreenTree Loan are delinquent and no modification agreement is in place. Under the Plan, the GreenTree Loan will be recapitalized and that recapitalized amount, which totals $167,702.50 based upon GreenTree's Proof of Claim, will be amortized over forty (40) years at 2.242% per annum, at a month payment of $529.45,

beginning on the Effective Date.[4]  GreenTree shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the GreenTree Loan Documents between the Debtors and GreenTree (or its predecessor) as existed pre-Petition.

33.     Class 33 – All Allowed Unsecured Claims

The Debtors will pay unsecured creditors in full as follows: all allowed unsecured claims will be paid in full on the ten (10) anniversary of the Effective Date.[5]

34.     Class 34 - Equity Interests in the Debtor, Bieberle Enterprises, Inc.

Under the Plan, Debtor, Darda Bieberle, will retain his one hundred percent (100%) equity interest in Debtor, Bieberle Enterprises, Inc.

E.     Unclassified Claims.   Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code.   They are not considered impaired, and holders of such Claims do not vote on the Plan.   They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.   As such, the Plan Proponent has not placed the following Claims in any class:

1.     Priority Claims.

Based on the Proof of Claim filed by the IRS (Claim No.: 2), Debtor, Bieberle Enterprises, Inc., owes the IRS $4,547.81.  Said amount will be paid over five (5) years

---

[4] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

[5] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

from the Effective Date,[6] at 6% interest per annum, for a monthly payment of $87.92 until satisfied.

Based on the Proof of Claim filed by the IRS (Claim No.: 1), Debtor, Darda Bieberle, owes the IRS $5,824.61. Said amount will be paid over five (5) years from the Effective Date,[7] at 6% interest per annum, for a monthly payment of $112.61 until satisfied.

Based on the Proofs of Claim filed by the Orange County Tax Collector (Claim Nos.: 5 and 6), Debtor, Darda Bieberle, owes the Orange County Tax Collector $3,578.59. Said amount will be paid over five (5) years from the Effective Date,[8] at 6% interest per annum, for a monthly payment of $69.18 until satisfied.

2.    Administrative Expenses.

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 Bankruptcy Case which are allowed under § 507(a)(2) of the Bankruptcy Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

---

[6] A confirmation hearing has not yet been set in the case. For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

[7] A confirmation hearing has not yet been set in the case. For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

[8] A confirmation hearing has not yet been set in the case. For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

| TYPE | ESTIMATED AMOUNT OWED | PROPOSED TREATMENT |
|---|---|---|
| Attorneys' Fees and Costs, as approved by the Court, to Bogin, Munns & Munns, P.A. | It is estimated that the total fees due will not exceed the retainer by more than $50,000.00. | These amounts will be paid in full on the Effective Date unless agreed otherwise by the administrative claimholder. |
| Clerk's Office Fees | $0.00 | Paid in full on the Effective Date[9] of the Plan |
| Office of the U.S. Trustee Fees | $0.00 | Paid in full on the Effective Date[10] of the Plan |
| **TOTAL** | Estimated $50,000.00 | |

  F. <u>Means of Implementing the Plan</u>.

    Debtors will continue to operate their business in the ordinary course after confirmation of the Plan and shall pay all payments under the Plan therefrom.

  **IV.** <u>**CONFIRMATION REQUIREMENTS AND PROCEDURES**</u>

  A. <u>Confirmation Hearing</u>.  Section 1128 of the Bankruptcy Code requires the Court, after notice, to conduct a hearing to determine whether the Plan should be confirmed pursuant to the provisions of § 1129 of the Bankruptcy Code.   At the Confirmation Hearing interested parties may be heard in support of or in opposition to Confirmation of the Plan.    The Confirmation Hearing may be adjourned by the Court by announcement made at the Confirmation Hearing and without further written notice.   If the Court enters an order approving this Disclosure Statement, then the Court will also provide in the order, or enter a separate order,

---

[9] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

[10] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

which schedules the date of the Confirmation Hearing and sets various deadlines, including the deadlines for filing ballots to accept or reject the Plan and for filing objections to Confirmation.

   B. <u>Confirmation Standards</u>. In order for the Court to confirm the Plan, the Court must determine that the Plan meets the requirements listed in §§ 1129(a) or (b) of the Bankruptcy Code. These include the requirements that: the Plan must be proposed in good faith; at least one impaired class of Claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation Bankruptcy Case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements listed in § 1129, and they are not the only requirements for confirmation.

   1. <u>Best Interests Test</u>. To confirm the Plan, the Court must find (with certain exceptions) that with respect to impaired Classes, either each holder of a Claim in each Impaired Class has (a) accepted the Plan, or (b) will receive at least as much under the Plan as such Claim or equity interest holders would receive in a Chapter 7 liquidation. In a hypothetical Chapter 7 Bankruptcy Case, the secured lenders, if not paid, would seek stay relief to recover the property(ies) subject to each lender's loan documents and would likely recover nothing on their deficiency claims. There could potentially be Personal Property to liquidate by a Chapter 7 Trustee, but the Debtors are not only currently performing under most of the above-listed secured obligations, but also the Debtors are proposing a 100% repayment to unsecured creditors; accordingly, the Debtors contend that Confirmation of the Plan rather than liquidation through a Chapter 7 is in the best interests of creditors. The Debtors have prepared an analysis

of results of the liquidation of its assets in a hypothetical Chapter 7 case (the "Liquidation Analysis"), which Liquidation Analysis is attached as **Exhibit "2."**

2.      <u>Feasibility</u>.   The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors, unless such liquidation or reorganization is proposed in the Plan. The Debtors assert that they can make the payments due under the Plan and therefore the Plan is feasible.

3.      <u>Acceptance by an Impaired Class</u>.   The Bankruptcy Code provides that the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, with the exception for approval by "cramdown" discussed below.

A Class of Claims accepts the Plan if both of the following occur: (1) if the Plan is accepted by the holders of more than one- half (1/2) in number of the Allowed Claims in the Class, who vote, and (2) if it is accepted by the holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims in the Class, who vote.

A Class of Interests accepts the Plan if the Plan has been accepted by the holders of at least two-thirds (2/3) in amount of the Allowed Interests in the Class, who vote.

A   Class of Claims or Interests that is not impaired under the Plan is deemed to have accepted the Plan and solicitation of acceptances with respect to Claims in Classes that are not impaired is not required.

4.      <u>Confirmation Without Acceptance by all Impaired Classes: "Cramdown"</u>. If one or more Impaired Classes reject the Plan, the Court may nonetheless confirm the Plan if

the non-accepting Classes are treated in the manner prescribed by § 1129(b) of the Bankruptcy Code. A plan that binds non-accepting classes is commonly referred to as a "cramdown" plan. The Bankruptcy Code allows the Plan to bind non-accepting Classes of Claims or Interests if it meets all the requirements for consensual confirmation under § 1129(a) except the voting requirements of § 1129(a)(8) of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable toward each impaired class that has not voted to accept the Plan.

C.    Consummation.    The Plan will be consummated and Payments made if the Plan is confirmed pursuant to a Final Order of the Bankruptcy Court and distributions under the Plan are commenced.    It will not be necessary for the Debtor to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan.    The Plan will be implemented pursuant to its provisions and the provisions of the Bankruptcy Code.

D.    Effects of Confirmation.

1.    Authority to Effectuate the Plan.    Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides that all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court.    The Debtors shall be authorized, without further application for an order of the Bankruptcy Court, to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with the Plan and the Bankruptcy Code.

2.    Binding Effect of Confirmation.    Confirmation of the Plan will legally bind the Debtors, all Creditors, Interest Holders, and other parties in interest to the provisions of the Plan whether or not the Claim or Interest Holder is impaired under the Plan and whether or not such Creditor or Interest Holder voted to accept the Plan.

3.      <u>Discharge of Claims.</u>    To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan, or the Confirmation Order:    (a) on the Effective Date the Confirmation Order shall operate as a discharge under 11 U. S. C. § 1141(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Debtors, the Reorganized Debtors and all of the Debtors' property that arose before Confirmation, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether: (i) a proof of Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to § 502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted to accept or reject the Plan; and (b) from and after the Effective Date: (i) all Holders of Claims shall be barred and enjoined from asserting against the Debtors, the Reorganized Debtors, and its property any Claims, Debts, Liens, Security Interests, and encumbrances of and against all property of the Debtors' estate, and  (ii)  the Debtors  and  the Reorganized  Debtors shall  be fully and  finally discharged of any liability or obligation on a Disallowed Claim or an Interest. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to §1141 of the Code.

4.      <u>Judicial Determination of Discharge</u>.    As of the Confirmation Date, except as provided in the Plan, all Persons shall be precluded from asserting against the Debtors and/or the Reorganized Debtors any other or further Claims, debts, rights, causes of action, liabilities, or equity interests based on any act, omission, transaction, or other activity of any

kind or nature that occurred before the Confirmation Date and the Confirmation Order shall be a judicial determination of discharge of all Claims against the Debtors and Reorganized Debtors, pursuant to Sections 524 and 1141 of the Code, and shall void any judgment obtained or entered against the Debtors and/or the Reorganized Debtors at any time to the extent the judgment relates to discharged Claims.

      **V.**       <u>**ALTERNATIVES TO THE PLAN**</u>.

If the Plan is not confirmed and consummated, the Debtors believe that the most likely alternatives are the dismissal of the Bankruptcy Case and then the completion of the foreclosure process by the various secured lenders.   The Debtors believe that such an alternative is a much less attractive to Creditors than the Plan because creditors will receive a distribution under the Plan and in the event of dismissal or conversion, creditors will not receive any form of payment or distribution on their Claims.

      **RESPECTFULLY SUBMITTED** this 17th day of December, 2014.

*/s/ L. William Porter III*                    
L. William Porter III
Florida Bar No. 0116882
BOGIN, MUNNS & MUNNS, P.A.
2601 Technology Drive
Orlando, Florida 32804
Telephone:  407-578-1334
Facsimile:  407-578-4444
Primary E-mail: bporter@boginmunns.com
Secondary E-mail: bmmservice@boginmunns.com
*Counsel for Debtor/Plan proponent*

EXHIBIT "1"

Plan of Reorganization

UNITED STATES BANKRUPTCY COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| In re: | CASE NO. 6:14-bk-01832-CCJ |
| BIEBERLE ENTERPRISES, | CHAPTER 11 |
| INC., et al., | (Jointly Administered) |

Debtors.

_____/

DEBTOR'S PLAN OF REORGANIZATION

ARTICLE 1

SUMMARY

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") is being proposed by DARDA BIEBERLE and BIEBERLE ENTRPRISES, INC. (the "Debtors") pursuant to 11 U.S.C. § 1121.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claims. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

# ARTICLE 2

## DEFINITIONS - INTERPRETATION - GENERAL PROVISIONS

2.01.   <u>Definitions</u>.  For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

a.   <u>Administrative Expense</u> shall mean a cost or expense of administration of the Chapter 11 Case allowed under §§ 503(b) and 507(a)(2) of the Bankruptcy Code.

b.   <u>Allowed</u> when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order; (b) allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

c.   <u>Bankruptcy Rules</u> mean the Federal Rules of Bankruptcy Procedure, as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended.

d.   <u>Bar Date</u> shall mean the date fixed by order of the Bankruptcy Court by which a proof of Claim or Interest must be filed against the Debtor.

e.   <u>Bankruptcy Code</u> shall mean 11 U.S.C. § 101, *et seq.*, and any amendments thereto.

f.   <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court, Middle District of Florida, Orlando Division, and any court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

g.   <u>Business Day</u> shall mean any day except Saturday, Sunday, or any legal holiday.

h.   <u>Chapter 11 Case</u> shall mean the above-referenced Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court.

i.      Claim shall mean, as defined in § 101(5) of the Bankruptcy Code: (a) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or, (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

j.      Class means a group of Claims of Interests substantially similar to each other as classified under this Plan.

k.      Confirmation Date shall mean the date of entry of the Confirmation Order.

l.      Confirmation Order shall mean the order entered by the Bankruptcy Court confirming the Plan.

m.      Contested when used with respect to a Claim or Interest, shall mean a Claim or Interest that is not an Allowed Claim or Interest.

n.      Disallowed when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent 10 days has expired since it has been disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such 10 day period, in which case the Claim or Interest shall be disallowed 30 days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

o.      Disclosure Statement means the disclosure statement that was filed by the Debtor pursuant to Bankruptcy Code § 1125 and any amendments thereto, including all exhibits.

p.      Distribution Date when used with respect to each Claim or Interest shall mean as soon as practicable after the later of (a) the Effective Date, or (b) the first Business Day of the next calendar month after the date upon which the Claim or Interest becomes an Allowed Claim or Interest, unless the Claim or Interest becomes an Allowed Claim or Interest within fifteen (15) days before the first Business Day of the next calendar month, in which case the Distribution Date shall be the first Business Day of the next succeeding calendar month.

q.      Effective Date shall mean: (a) if no stay of the Confirmation Order is in effect, then the 15th day after the Confirmation Order is entered, or (b) if a stay of the Confirmation Order is in effect, then the 15th day following the date the stay is vacated or any appeal, rehearing, remand or petition for certiorari is resolved in a manner that does not reverse or materially modify the Confirmation Order.

r.    Final Order means an order of the Bankruptcy Court, which order shall not have been reversed, stayed, modified or amended and the time to appeal from or to seek review or rehearing of such order shall have expired and which shall have become final in accordance with applicable law.

s.    Interest means equity interest in the Debtor, Bieberle Enterprises, Inc.

t.    Objection Deadline means the date by which objections to Claims and Interests must be filed with the Bankruptcy Court which shall be 30 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

u.    Petition Date shall mean March 18, 2014, in the individual case of Darda Bieberle and February 19, 2014, in the corporate case filed by Bieberle Enterprises, Inc.

v.    Plan shall mean this Chapter 11 plan, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

w.    Priority Non-Tax Claim shall mean a Claim entitled to priority pursuant to §§ 507(a)(3), 507(a)(4),  507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code.

x.    Priority Tax Claim shall mean a Claim entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

y.    Real Property shall mean all real property owned by both Debtors.

z.    Secured Claim shall mean a Claim secured by a lien against property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Bankruptcy Code to the extent of the value (determined in accordance with § 506(a) of the Bankruptcy Code) of the interest of the holder of such Claim in the Debtor's interest in such property or to the extent of the amounts subject to such setoff, as the case may be.

aa.    Unsecured Claim means a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, or a Secured Claim.

2.02    Bankruptcy Code Definitions.  Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan.   The rules of construction in Bankruptcy Code § 102 shall apply to the Plan.

2.03.    Interpretation.    Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.    As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations.

2.04.    <u>Severability</u>.    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

2.05.    <u>Binding Effect</u>.    The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

2.06.    <u>Captions</u>.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

2.07.    <u>Controlling Effect</u>.    Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE 3

## <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

Claims against and Interests in the Debtors will be classified as follows except to the extent otherwise agreed.

Class 1 - Secured Claim of Midland Bank Relating to Property at 2440 and 2442 Fielding Court, Orlando, Florida

Class 2 - Secured Claim of Chase Bank Relating to Property at 2463 and 2465 Fielding Court, Orlando, Florida

Class 3 - Secured Claim of Chase Bank Relating to Property at 2472 and 2474 Fielding Court, Orlando, Florida

Class 4 - Secured Claim of Nationstar Bank Relating to Property at 4730 Southern Willow Lane, Orlando, Florida

Class 5 - Secured Claim of Nationstar Bank Relating to Property at 4736 Southern Willow Lane, Orlando, Florida

Class 6 - Secured Claim of Nationstar Bank Relating to Property at 4742 Southern Willow Lane, Orlando, Florida

Class 7 - Secured Claim of Ocwen Bank Relating to Property at 4746 Southern Willow Lane, Orlando, Florida

Class 8 - Secured Claim of Chase Bank Relating to Property at 4750 Southern Willow Lane, Orlando, Florida

Class 9 - Secured Claim of Chase Bank Relating to Property at 4754 Southern Willow Lane, Orlando, Florida

Class 10 - Secured Claim of Chase Bank Relating to Property at 2833 Bower Road, Winter Park, Florida

Class 11 - Secured Claim of Wells Fargo Bank Relating to Property at 2833 Bower Road, Winter Park, Florida

Class 12 - Secured Claim of Chase Bank Relating to Property at 129 Cornwall Road, Winter Park, Florida

Class 13 - Secured Claim of Wells Fargo Bank Relating to Property at 129 Cornwall Road, Winter Park, Florida

Class 14 - Secured Claim of BSI Relating to Property at 641 Roughbeard Road, Winter Park, Florida

Class 15 - Secured Claim of Chase Bank Relating to Property at 2940 Scarlet Road, Winter Park, Florida

Class 16 - Secured Claim of Wells Fargo Bank Relating to Property at 2940 Scarlet Road, Winter Park, Florida

Class 17 - Secured Claim of AHMSI Relating to Property at 222 Ranger Avenue, Winter Park, Florida

Class 18 - Secured Claim of Chase Bank Relating to Property at 2766 Cady Avenue, Winter Park, Florida

Class 19 - Secured Claim of Chase Bank Relating to Property at 1773 Walnut Avenue, Winter Park, Florida

Class 20 - Secured Claim of Wells Fargo Bank Relating to Property at 1773 Walnut Avenue, Winter Park, Florida

Class 21 - Secured Claim of Chase Bank Relating to Property at 1725 Aloma Avenue, Winter Park, Florida

Class 22 - Secured Claim of Chase Bank Relating to Property at 1820 Aloma Avenue, Winter Park, Florida

Class 23 - Secured Claim of Citibank Relating to Property at 3800 Sea Island Court, Orlando, Florida

Class 24 - Secured Claim of SES Relating to Property at 2618 Lafayette Avenue, Winter Park, Florida

Class 25 - Secured Claim of Chase Bank Relating to Property at 2001 Commerce Boulevard, Orlando, Florida

Class 26 - Secured Claim of SPS Relating to Property at 251 and 253 Concord Avenue, Casselberry, Florida

Class 27 - Secured Claim of Wells Fargo Bank Relating to Property at 3180 Pittman Road, Apopka, Florida

Class 28 - Secured Claim of Carrington Mortgage Relating to Property at 2606 Mandan Trail, Winter Park, Florida- ***Arrears Only***

Class 29 - Secured Claim of Carrington Mortgage Relating to Property at 2606 Mandan Trail, Winter Park, Florida- ***Principal***

Class 30 - Secured Claim of $5^{th}/3^{rd}$ Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida

Class 31 - Secured Claim of Wells Fargo Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida

Class 32 - Secured Claim of GreenTree Relating to Property at 2666 Fitzhugh Road, Winter Park, Florida

Class 33 - All Allowed Unsecured Claims.

Class 34 - Equity Interests in the Debtor.

# ARTICLE 4

## TREATMENT OF ADMINISTRATIVE EXPENSE

## CLAIMS, U.S. TRUSTEE FEES, AND PRIORITY TAX CLAIMS

4.01    Unclassified Claims.   Under section § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

4.02    Administrative Expense Claims.   Each holder of an allowed administrative expense claim will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

4.03    Priority Tax Claims. Each holder of a priority tax claim will be paid in full in cash on the effective date of the Plan.

4.04    United States Trustee Fees.   All fees required to be paid by 28 U. S. C. § 1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.   Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

# ARTICLE 5

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

A.    Impaired Classes.   Based on the treatment indicated below, the following classes of claims are **impaired** under the terms of the Plan:

5.01.  Impaired Secured Claims:

1.    Class 1 - Secured Claim of Midland Bank Relating to Property at 2440 and 2442 Fielding Court, Orlando, Florida.

This loan from Midland Bank (the "Midland Loan") relates to property located at 2440 and 2442 Fielding Court, Orlando, Florida.   The obligor under the subject loan documents (the "Midland Loan Documents") is Darda Bieberle, individually.   Payments under the Midland Loan are current as of the time of filing of the instant Disclosure Statement.   Debtors adopt under the Plan the Midland Loan Documents except as to the interest rate thereunder, which is currently at 10% per annum.   Under the Plan, the

Midland Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Midland Loan Documents beginning on the Effective Date of the Plan.  Midland Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Midland Loan Documents between Debtors and Midland Bank as existed pre-Petition.

      2.     <u>Class 2 - Secured Claim of Chase Bank Relating to Property at 2463 and 2465 Fielding Court, Orlando, Florida</u>

This loan from Chase Bank (the "First Chase Loan") relates to property located at 2463 and 2465 Fielding Court, Orlando, Florida.  The obligor under the subject loan documents (the "First Chase Loan Documents") is Darda Bieberle, individually. Payments under the First Chase Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the First Chase Loan Documents except as to the interest rate thereunder, which is currently at 7.125% per annum.  Under the Plan, the First Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the First Chase Loan Documents beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the First Chase Loan Documents between the Debtors and  Chase Bank as existed pre-Petition.

      3.     <u>Class 3 - Secured Claim of Chase Bank Relating to Property at 2472 and 2474 Fielding Court, Orlando, Florida</u>

This loan from Chase Bank (the "Second Chase Loan") relates to property located at 2472 and 2474 Fielding Court, Orlando, Florida.  The obligor under the subject loan documents (the "Second Chase Loan Documents") is Darda Bieberle, individually.  The Second Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Second Chase Loan Modification Agreement") dated on or about July, 2014.  Debtors reaffirm and readopt under the Plan the Second Chase Loan Documents as modified by the Second Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 7.00% per annum.  Under the Plan, the Second Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Second Chase Loan Documents, as modified by the Second Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Second Chase Loan Documents, as modified by the Second Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

4.    <u>Class 4 - Secured Claim of Nationstar Bank Relating to Property at 4730 Southern Willow Lane, Orlando, Florida</u>

This loan from Nationstar Bank (the "First Nationstar Loan") relates to property located at 4730 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "First Nationstar Loan Documents") is Bieberle Enterprises, Inc. Payments under the First Nationstar Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the First Nationstar Loan Documents except as to the interest rate thereunder, which is currently at 8.875% per annum.  Under the Plan, the First Nationstar Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the First Nationstar Loan Documents beginning on the Effective Date of the Plan.  Nationstar Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the First Nationstar Loan Documents between the Debtors and Nationstar Bank as existed pre-Petition.

5.    <u>Class 5 - Secured Claim of Nationstar Bank Relating to Property at 4736 Southern Willow Lane, Orlando, Florida</u>

This loan from Nationstar Bank (the "Second Nationstar Loan") relates to property located at 4736 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Second Nationstar Loan Documents") is Bieberle Enterprises, Inc.  Payments under the Second Nationstar Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Second Nationstar Loan Documents except as to the interest rate thereunder, which is currently at 8.875% per annum.  Under the Plan, the Second Nationstar Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Second Nationstar Loan Documents beginning on the Effective Date of the Plan. Nationstar Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Second Nationstar Loan Documents between the Debtors and Nationstar Bank as existed pre-Petition.

6.    <u>Class 6 - Secured Claim of Nationstar Bank Relating to Property at 4742 Southern Willow Lane, Orlando, Florida</u>

This loan from Nationstar Bank (the "Third Nationstar Loan") relates to property located at 4742 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Third Nationstar Loan Documents") is Bieberle Enterprises, Inc. Payments under the Third Nationstar Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Third Nationstar Loan

Documents except as to the interest rate thereunder, which is currently at 8.875% per annum.  Under the Plan, the Third Nationstar Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Third Nationstar Loan Documents beginning on the Effective Date of the Plan.  Nationstar Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Third Nationstar Loan Documents between the Debtors and Nationstar Bank as existed pre-Petition.

7.      Class 7 - Secured Claim of Ocwen Bank Relating to Property at 4746 Southern Willow Lane, Orlando, Florida

This loan from Ocwen Bank (the "Ocwen Loan") relates to property located at 4746 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Ocwen Loan Documents") is Bieberle Enterprises, Inc.  The Ocwen Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Ocwen Loan Modification Agreement") dated in or about August, 2013.  Debtors reaffirm and readopt under the Plan the Ocwen Loan Documents as modified by the Ocwen Loan Modification Agreement except as to the interest rate thereunder, which is currently at 7.00% per annum.  Under the Plan, the Ocwen Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Ocwen Loan Documents, as modified by the Ocwen Loan Modification Agreement, beginning on the Effective Date of the Plan.  Ocwen Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Ocwen Loan Documents, as modified by the Ocwen Loan Modification Agreement, between the Debtors and Ocwen Bank as existed pre-Petition.

8.      Class 8 - Secured Claim of Chase Bank Relating to Property at 4750 Southern Willow Lane, Orlando, Florida

This loan from Chase Bank (the "Third Chase Loan") relates to property located at 4750 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Third Chase Loan Documents") is Bieberle Enterprises, Inc.  The Third Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Third Chase Loan Modification Agreement") dated in or about July, 2012.  Debtors reaffirm and readopt under the Plan the Third Chase Loan Documents as modified by the Third Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 4.25% per annum.  Under the Plan, the Third Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Third Chase Loan Documents, as modified by the Third Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank

shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Third Chase Loan Documents, as modified by the Third Chase Loan Modification Agreement, between Debtors and Chase Bank as existed pre-Petition.

   9.     Class 9 - Secured Claim of Chase Bank Relating to Property at 4754 Southern Willow Lane, Orlando, Florida

       This loan from Chase Bank (the "Fourth Chase Loan") relates to property located at 4754 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "Fourth Chase Loan Documents") is Bieberle Enterprises, Inc. Payments under the Fourth Chase Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Fourth Chase Loan Documents except as to the interest rate thereunder, which is currently at 9.00% per annum.  Under the Plan, the Fourth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Fourth Chase Loan Documents beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Fourth Chase Loan Documents between the Debtors and  Chase Bank as existed pre-Petition.

   10.    Class 10 - Secured Claim of Chase Bank Relating to Property at 2833 Bower Road, Winter Park, Florida

       This loan from Chase Bank (the "Fifth Chase Loan") relates to property located at 2833 Bower Road, Winter Park, Florida.   The obligor under the subject loan documents (the "Fifth Chase Loan Documents") is Bieberle Enterprises, Inc.  The Fifth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Fifth Chase Loan Modification Agreement") dated on or about November, 2012.  Debtors reaffirm and readopt under the Plan the Fifth Chase Loan Documents as modified by the Fifth Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 9.00% per annum.  Under the Plan, the Fifth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Fifth Chase Loan Documents, as modified by the Fifth Chase Loan Modification Agreement, beginning on the Effective Date of the Plan. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Fifth Chase Loan Documents, as modified by the Fifth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

11.    Class 11 - Secured Claim of Wells Fargo Bank Relating to Property at
2833 Bower Road, Winter Park, Florida

This loan from Wells Fargo Bank (the "First Wells Fargo Loan") relates to a second mortgage on the property located at 2833 Bower Road, Winter Park, Florida. The obligor under the subject loan documents (the "First Wells Fargo Loan Documents") is Bieberle Enterprises, Inc. Payments under the First Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement. Debtors adopt under the Plan the First Wells Fargo Loan Documents except as to the interest rate thereunder, which is currently at 4.25% per annum. Under the Plan, the First Wells Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the First Wells Fargo Loan Documents beginning on the Effective Date of the Plan. Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the First Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

12.    Class 12 - Secured Claim of Chase Bank Relating to Property at 129
Cornwall Road, Winter Park, Florida

This loan from Chase Bank (the "Sixth Chase Loan") relates to property located at 129 Cornwall Road, Winter Park, Florida. The obligor under the subject loan documents (the "Sixth Chase Loan Documents") is Bieberle Enterprises, Inc. The Sixth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Sixth Chase Loan Modification Agreement") dated in or about January, 2014. Debtors reaffirm and readopt under the Plan the Sixth Chase Loan Documents as modified by the Sixth Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 4.913% per annum. Under the Plan, the Sixth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Sixth Chase Loan Documents, as modified by the Sixth Chase Loan Modification Agreement, beginning on the Effective Date of the Plan. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Sixth Chase Loan Documents, as modified by the Sixth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

13.     Class 13 - Secured Claim of Wells Fargo Bank Relating to Property at 129 Cornwall Road, Winter Park, Florida

This loan from Wells Fargo Bank (the "Second Wells Fargo Loan") relates to a second mortgage on the property located at 129 Cornwall Road, Winter Park, Florida. The obligor under the subject loan documents (the "Second Wells Fargo Loan Documents") is Bieberle Enterprises, Inc.  Payments under the Second Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Second Wells Fargo Loan Documents except as to the interest rate thereunder, which is currently at 4.50% per annum.  Under the Plan, the Second Wells Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Second Wells Fargo Loan Documents beginning on the Effective Date of the Plan.  Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Second Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

14.     Class 14 - Secured Claim of BSI Relating to Property at 641 Roughbeard Road, Winter Park, Florida

This loan from BSI (the "BSI Loan") relates to a second mortgage on the property located at 641 Roughbeard Road, Winter Park, Florida.  The obligor under the subject loan documents (the "BSI Loan Documents") is Bieberle Enterprises, Inc. Payments under the BSI Loan are delinquent and no modification agreement is in place. Under the Plan, the BSI Loan will be recapitalized and that recapitalized amount, which totals $293,090.68 pursuant to the Proof of Claim filed herein by BSI (Claim No. 3 in the Bieberle Enterprises, Inc. case), will be amortized over forty (40) years at 2.242% per annum, at a month payment of $925.32, beginning on the Effective Date.[11]  BSI shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the BSI Loan Documents between the Debtors and BSI as existed pre-Petition.

---

[11] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

15.     Class 15 - Secured Claim of Chase Bank Relating to Property at 2940 Scarlet Road, Winter Park, Florida

This loan from Chase Bank (the "Seventh Chase Loan") relates to property located at 2940 Scarlet Road, Winter Park, Florida.  The obligor under the subject loan documents (the "Seventh Chase Loan Documents") is Bieberle Enterprises, Inc. Payments under the Seventh Chase Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Seventh Chase Loan Documents except as to the interest rate thereunder, which is currently at 3.228% per annum.  Under the Plan, the Seventh Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Seventh Chase Loan Documents beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Seventh Chase Loan Documents between the Debtors and  Chase Bank as existed pre-Petition.

16.     Class 16 - Secured Claim of Wells Fargo Bank Relating to Property at 2940 Scarlet Road, Winter Park, Florida

This loan from Wells Fargo Bank (the "Third Wells Fargo Loan") relates to a second mortgage on the property located at 2940 Scarlet Road, Winter Park, Florida. The obligor under the subject loan documents (the "Third Wells Fargo Loan Documents") is Bieberle Enterprises, Inc.  Payments under the Third Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Third Wells Fargo Loan Documents except as to the interest rate thereunder, which is currently at 4.25% per annum.  Under the Plan, the Third Wells Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Third Wells Fargo Loan Documents beginning on the Effective Date of the Plan.  Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Third Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

17.     Class 17 - Secured Claim of AHMSI Relating to Property at 222 Ranger Avenue, Winter Park, Florida

This loan from AHMSI (the "AHMSI Loan") relates to property located at 222 Ranger Avenue, Winter Park, Florida.  The obligor under the subject loan documents (the "AHMSI Loan Documents"), and the party in whose name title to the subject property currently rests, is Darda Bieberle's former spouse, Wendy Bieberle.  However,

under the Marital Settlement Agreement between the parties (the "MSA"), title to the subject property passed to Darda Bieberle, and he has an interest in the subject property that may be treated under the herein Plan.  In addition, it is Darda Bieberle who makes the payments to AHMSI on a monthly basis.  The AHMSI Loan has been modified by the parties pursuant to that certain Modification Agreement (the "AHMSI Loan Modification Agreement") dated in or about June, 2014.  Debtors reaffirm and readopt under the Plan the AHMSI Loan Documents as modified by the AHMSI Loan Modification Agreement except that: (i) Bieberle Enterprises, Inc. shall be substituted in as obligor under the AHMSI Loan Documents; (ii) Wendy Bieberle shall be released of any obligation relating to the AHMSI Loan; and (iii) the interest rate thereunder, which is currently at 7.70% per annum, shall, under the Plan, be modified and reduced to 2.242% per annum, which shall be the rate governing the AHMSI Loan Documents, as modified by the AHMSI Loan Modification Agreement, beginning on the Effective Date of the Plan.  AHMSI shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the AHMSI Loan Documents, as modified by the AHMSI Loan Modification Agreement, between the Debtors and AHMSI as existed pre-Petition.

18.     Class 18 - Secured Claim of Chase Bank Relating to Property at 2766 Cady Avenue, Winter Park, Florida

This loan from Chase Bank (the "Eighth Chase Loan") relates to property located at 2766 Cady Avenue, Winter Park, Florida.  The obligor under the subject loan documents (the "Eighth Loan Documents") is Bieberle Enterprises, Inc.  The Eighth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Eighth Chase Loan Modification Agreement") dated in or about February, 2013.  Debtors reaffirm and readopt under the Plan the Eighth Chase Loan Documents as modified by the Eighth Chase Loan Modification Agreement, including rate of 2.242% per annum.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Eighth Chase Loan Documents, as modified by the Eighth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

19.     Class 19 - Secured Claim of Chase Bank Relating to Property at 1773 Walnut Avenue, Winter Park, Florida

This loan from Chase Bank (the "Ninth Chase Loan") relates to property located at 1773 Walnut Avenue, Winter Park, Florida.  The obligor under the subject loan documents (the "Ninth Chase Loan Documents") is Bieberle Enterprises, Inc.  Payments under the Ninth Chase Loan are current as of the time of filing of the instant Disclosure

Statement. Debtors adopt under the Plan the Ninth Chase Loan Documents except as to the interest rate thereunder, which is currently at 7.75% per annum. Under the Plan, the Ninth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Ninth Chase Loan Documents beginning on the Effective Date of the Plan. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Ninth Chase Loan Documents between the Debtors and Chase Bank as existed pre-Petition.

      20.      <u>Class 20 - Secured Claim of Wells Fargo Bank Relating to Property at 1773 Walnut Avenue, Winter Park, Florida</u>

This loan from Wells Fargo Bank (the "Fourth Wells Fargo Loan") relates to a second mortgage on the property located at 1773 Walnut Avenue, Winter Park, Florida. The obligor under the subject loan documents (the "Fourth Wells Fargo Loan Documents") is Bieberle Enterprises, Inc. Payments under the Fourth Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement. Debtors adopt under the Plan the Fourth Wells Fargo Loan Documents except as to the interest rate thereunder, which is currently at 4.25% per annum. Under the Plan, the Fourth Wells Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Fourth Wells Fargo Loan Documents beginning on the Effective Date of the Plan. Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Fourth Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

      21.      <u>Class 21 - Secured Claim of Chase Bank Relating to Property at 1725 Aloma Avenue, Winter Park, Florida</u>

This loan from Chase Bank (the "Tenth Chase Loan") relates to property located at 1725 Aloma Avenue, Winter Park, Florida. The obligor under the subject loan documents (the "Tenth Chase Loan Documents") is Bieberle Enterprises, Inc. The Tenth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Tenth Chase Loan Modification Agreement") dated in or about December, 2012. Debtors reaffirm and readopt under the Plan the Tenth Chase Loan Documents as modified by the Tenth Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 6.50% per annum. Under the Plan, the Tenth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Tenth Chase Loan Documents, as modified by the Tenth Chase Loan Modification Agreement, beginning on the Effective Date of the Plan. Chase Bank shall retain any and all liens it has against the aforesaid real property to the

same extent, validity and priority provided in the Tenth Chase Loan Documents, as modified by the Tenth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

22.    Class 22 - Secured Claim of Chase Bank Relating to Property at 1820 Aloma Avenue, Winter Park, Florida

This loan from Chase Bank (the "Eleventh Chase Loan") relates to property located at 1820 Aloma Avenue, Winter Park, Florida.  The obligor under the subject loan documents (the "Eleventh Chase Loan Documents") is Bieberle Enterprises, Inc.  The Eleventh Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Eleventh Chase Loan Modification Agreement") dated in or about January, 2013.  Debtors reaffirm and readopt under the Plan the Eleventh Chase Loan Documents as modified by the Eleventh Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 3.31% per annum.  Under the Plan, the Eleventh Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Eleventh Chase Loan Documents, as modified by the Eleventh Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Eleventh Chase Loan Documents, as modified by the Eleventh Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

23.    Class 23 - Secured Claim of Citibank Relating to Property at 3800 Sea Island Court, Orlando, Florida

This loan from Citibank (the "Citibank Loan") relates to property located at 3800 Sea Island Court, Orlando, Florida.  The obligor under the subject loan documents (the "Citibank Loan Documents") is Bieberle Enterprises, Inc.  The Citibank Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Citibank Loan Modification Agreement") dated in or about December, 2012.  Debtors reaffirm and readopt under the Plan the Citibank Loan Documents as modified by the Citibank Loan Modification Agreement except as to the interest rate thereunder, which is currently at 4.25% per annum.  Under the Plan, the Citibank Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Citibank Loan Documents, as modified by the Citibank Loan Modification Agreement, beginning on the Effective Date of the Plan.  Citibank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Citibank Loan Documents, as modified by the Citibank Loan Modification Agreement, between the Debtors and Citibank as existed pre-Petition.

24.    Class 24 - Secured Claim of SES Relating to Property at 2618 Lafayette Avenue, Winter Park, Florida

This loan from SES (the "SES Loan") relates to property located at 2618 Lafayette Avenue, Winter Park, Florida.  The obligor under the subject loan documents (the "SES Loan Documents") is Darda Bieberle, individually.  The SES Loan has been modified by the parties pursuant to that certain Modification Agreement (the "SES Loan Modification Agreement") dated in or about January, 2013.  Debtors reaffirm and readopt under the Plan the SES Loan Documents as modified by the SES Loan Modification Agreement except as to the interest rate thereunder, which is currently at 4.75% per annum.  Under the Plan, the SES Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the SES Loan Documents, as modified by the SES Loan Modification Agreement, beginning on the Effective Date of the Plan.  SES shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the SES Loan Documents, as modified by the SES Loan Modification Agreement, between the Debtors and SES as existed pre-Petition.

25.    Class 25 - Secured Claim of Chase Bank Relating to Property at 2001 Commerce Boulevard, Orlando, Florida

This loan from Chase Bank (the "Twelfth Chase Loan") relates to property located at 2001 Commerce Boulevard, Orlando, Florida.  The obligor under the subject loan documents (the "Twelfth Chase Loan Documents") is Bieberle Enterprises, Inc.  The Twelfth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Twelfth Chase Loan Modification Agreement") dated in or about February, 2014.  Debtors reaffirm and readopt under the Plan the Twelfth Chase Loan Documents as modified by the Twelfth Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 7.25% per annum.  Under the Plan, the Twelfth Chase Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Twelfth Chase Loan Documents, as modified by the Twelfth Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Twelfth Chase Loan Documents, as modified by the Twelfth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition.

26.     Class 26 - Secured Claim of SPS Relating to Property at 251 and 253 Concord Avenue, Casselberry, Florida

This loan from SPS (the "SPS Loan") relates to property located at 251 and 253 Concord Avenue, Casselberry, Florida.  The obligor under the subject loan documents (the "SPS Loan Documents") is Darda Bieberle, individually.  Payments under the SPS Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the SPS Loan Documents except as to the interest rate thereunder, which is currently at 9.275% per annum.  Under the Plan, the SPS Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the SPS Loan Documents beginning on the Effective Date of the Plan.  SPS shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the SPS Loan Documents between the Debtors and SPS as existed pre-Petition.

27.     Class 27 - Secured Claim of Wells Fargo Bank Relating to Property at 3180 Pittman Road, Apopka, Florida

This loan from Wells Fargo Bank (the "Fifth Wells Fargo Loan") relates to property located at 3180 Pittman Road, Apopka, Florida.  The obligor under the subject loan documents (the "Fifth Wells Fargo Loan Documents") is Darda Bieberle, individually.  Payments under the Fifth Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the Fifth Wells Fargo Loan Documents except as to the interest rate thereunder, which is currently at 6.00% per annum.  Under the Plan, the Fifth Wells Fargo Loan interest rate shall be modified and reduced to 2.242% per annum, which shall be the rate governing the Fifth Wells Fargo Loan Documents beginning on the Effective Date of the Plan.  Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Fifth Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

28.     Class 28 - Secured Claim of Carrington Mortgage Relating to Property at 2606 Mandan Trail, Winter Park, Florida- ***Arrears Only***

This loan from Carrington Mortgage (the "Carrington Loan") relates to property located at 2606 Mandan Trail, Winter Park, Florida, which is the Debtor, Darda Bieberle's, homestead property.  The obligor under the subject loan documents (the "Carrington Loan Documents") is Darda Bieberle, individually.  Payments under the Carrington Loan are delinquent going back to November, 2011, and no modification agreement is in place.  The arrears under the Carrington Loan are estimated to be

$65,000.00 (no Proof of Claim has yet been filed).  Under the Plan, said arrears will be amortized over five (5) years at the contract rate of interest of 3.125% per annum, at a month payment of $1,171.58 beginning on the Effective Date.[12]  Carrington shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Carrington Loan Documents between the Debtors and Carrington as existed pre-Petition.

29. Class 32 - Secured Claim of GreenTree Relating to Property at 2666 Fitzhugh Road, Winter Park, Florida

This loan currently held by GreenTree Servicing (the "GreenTree Loan") relates to property located at 2666 Fitzhugh Road, Winter Park, Florida.  The obligor under the subject loan documents (the "GreenTree Loan Documents"), and the party in whose name title to the subject property currently rests, is Darda Bieberle's mother, Henrietta Bieberle, who has since passed away.   The property is the subject of a foreclosure proceeding in the case styled as: *Bank of America v. Unknown Spouses, Heirs claiming against Henrietta J. Bieberle, et al.*, Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, Case No. 2011-CA-017461-O.  However, as an heir, Darda Bieberle has an interest in the subject property that may be treated under the herein Plan.  Payments under the GreenTree Loan are delinquent and no modification agreement is in place.  Under the Plan, the GreenTree Loan will be recapitalized and that recapitalized amount, which totals $167,702.50 based upon GreenTree's Proof of Claim, will be amortized over forty (40) years at 2.242% per annum, at a month payment of $529.45, beginning on the Effective Date.[13]  GreenTree shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the GreenTree Loan Documents between the Debtors and GreenTree (or its predecessor) as existed pre-Petition.

---

[12] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

[13] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

5.02    Class 33 – All Allowed Unsecured Claims

The Debtors will pay unsecured creditors in full as follows: all allowed unsecured claims will be paid in full on the ten (10) anniversary of the Effective Date.[14]

B.    Unimpaired Classes.  Based on the treatment indicated, the following classes of claims are **unimpaired** under the terms of the Plan:

1.    Class 29 - Secured Claim of Carrington Mortgage Relating to Property at 2606 Mandan Trail, Winter Park, Florida- ***Principal***

Payments under the Carrington Loan will resume on the Effective Date. [15]  All terms of the Carrington Loan Documents are adopted under the Plan.  Carrington shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Carrington Loan Documents between the Debtors and Carrington as existed pre-Petition.

2.    Class 30 - Secured Claim of $5^{th}/3^{rd}$ Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida

This loan from $5^{th}/3^{rd}$ Bank (the "$5^{th}/3^{rd}$ Loan") relates to a second mortgage on the property located at 2606 Mandan Trail, Winter Park, Florida.  The obligor under the subject loan documents (the "$5^{th}/3^{rd}$ Loan Documents") is Darda Bieberle, individually. Payments under the $5^{th}/3^{rd}$ Loan are current as of the time of filing of the instant Disclosure Statement.  Debtors adopt under the Plan the $5^{th}/3^{rd}$ Loan Documents. Fifth/Third Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the $5^{th}/3^{rd}$ Loan Documents between the Debtors and $5^{th}/3^{rd}$ Bank as existed pre-Petition.

3.    Class 31 - Secured Claim of Wells Fargo Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida

This loan from Wells Fargo Bank (the "Sixth Wells Fargo Loan") relates to a third mortgage on the property located at 2606 Mandan Trail, Winter Park, Florida.  The

---

[14] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

[15] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

obligor under the subject loan documents (the "Sixth Wells Fargo Loan Documents") is Darda Bieberle, individually. Payments under the Sixth Wells Fargo Loan are current as of the time of filing of the instant Disclosure Statement. Debtors adopt under the Plan the Sixth Wells Fargo Loan Documents. Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Sixth Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition.

5.03  Class 5 – <u>Equity Interests in the Debtor, Bieberle Enterprises, Inc</u>.

The legal, equitable and contractual rights of the holders of equity interests will be unaltered by the Plan.

**ARTICLE 6**

**<u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>**

6.01    <u>Disputed Claim</u>.    A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtors or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtors have scheduled such claim as disputed, contingent, or unliquidated.

6.02    <u>Delay of Distribution on a Disputed Claim</u>.    No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

6.03    <u>Settlement of Disputed Claims</u>.    The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**ARTICLE 7**

**<u>PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

7.01    <u>Assumed Executory Contracts and Unexpired Leases</u>.    The Debtors assume the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan:

NONE

7.02    <u>Rejected Executory Contracts and Unexpired Leases</u>.    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 7.01 above.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

**ARTICLE 8**

**<u>MEANS FOR IMPLEMENTATION OF THE PLAN</u>**

8.01    <u>Funding and Implementation of the Plan.</u>    All payments due under this Plan will be funded from proceeds from the sale of the Real Property.

8.02    <u>Continued Existence</u>.  The Debtor, Bieberle Enterprises, Inc., shall continue to exist after the effective date as a Corporation in accordance with the laws of the State of Florida.

8.03    <u>Management</u>. Darda Bieberle will continue to act as the President of Bieberle Enterprises, Inc. and will receive compensation post-confirmation as determined by Bieberle Enterprises, Inc.

8.04    <u>Restated Articles of Organization</u>.  The operating agreement, if any, of Bieberle Enterprises, Inc. shall be amended as necessary to satisfy the provisions of the Plan and Bankruptcy Code.

8.05    <u>Revesting of Assets</u>.  The property of the estate of the Debtors shall revest in the Debtors on the Effective Date, [16] except as otherwise provided in the Plan.  On and after the Effective Date, the Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code.  As of the Effective Date, all property of the Debtors shall be free and clear of all Claims and Interests, except as specifically provided in the Plan.

8.06    <u>Assumption of Liabilities</u>.    The liability for and obligation to make the distributions required under the Plan, shall be assumed by the Debtors which shall have the liability for and obligation to make all distributions of property under the Plan.

8.07    <u>Avoidance Actions</u>.  Causes of action assertable by the Debtors pursuant to Bankruptcy Code §§ 542, 543, 544, 545, 547, 548, 549, 550, or 553 shall, except as otherwise

---

[16] A confirmation hearing has not yet been set in the case.  For purposes of the treatment of this claim, the Debtors have estimated an Effective Date of January 1, 2015.

provided in the Plan, be retained by the Debtors.  Any net recovery realized by a Debtor on account of such causes of action, shall be the property of the Debtors.

**RESPECTFULLY SUBMITTED** this 17th day of December, 2014.


*/s/ L. William Porter III*

L. William Porter III
Florida Bar No. 0116882
BOGIN, MUNNS & MUNNS, P.A.
2601 Technology Drive
Orlando, Florida 32804
Telephone:  407-578-1334
Facsimile:  407-578-4444
Primary E-mail: bporter@boginmunns.com
Secondary E-mail: bmmservice@boginmunns.com
*Counsel for Debtor/Plan proponent*

**EXHIBIT "2"**

**Liquidation Analysis**

Total Value of Real Property (Per Schedule A)[17]        $ 2,904,889.00

Total Value of Personal Property (Per Schedule B)[18]        $ 222,757.43

*Total Assets for Chapter 7 Trustee to Distribute*

$ 2,904,889.00

+ _____

$ 222,757.43

_____

$ 3,127,646.43

Projected Distribution to Creditors

*Creditor Classification*

| | |
|---|---|
| Administrative Expenses (estimate) | $50,000.00 |
| Priority Amounts | $13,951.01 |
| Allowed Secured Claims | $ 2,752,867.05 |
| Allowed General Unsecured Claims as filed | $15,305.90 |
| Total of all claims (estimate) | $ 2,832,123.96 |

Projected Distribution to Creditors        100% of allowed claims

_____

[17] This is an aggregate number for the estimated value of all real property listed on Schedule A from each Debtor's case; no actual appraisals were conducted.

[18] This is an aggregate number for the estimated value of all personal property listed on Schedule B from each Debtor's case; no actual appraisals were conducted.