ORDERED.

Dated:  November 16, 2015

*Cynthia C. Jackson*
Cynthia C. Jackson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| **In re:** | **CASE NO. 6:14-bk-01832-CCJ** |
| **BIEBERLE ENTERPRISES,** | **CHAPTER 11** |
| **INC., et al.,** | **(Jointly Administered)** |
| Debtors. | |
| _____/ | |

**ORDER APPROVING DEBTORS' DISCLOSURE STATEMENT AND CONFIRMING
DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION**

This case came on for hearing on October 6, 2015, for the Court to consider (a) confirmation of the combined Debtors' Second Amended Plan of Reorganization (Docket No.: 205) (the "Plan"), and (b) final approval of the combined Debtors' Disclosure Statement (Docket No.: 80) (the "Disclosure Statement").

These cases were directed to be jointly administered by Orders entered on July 24, 2014, in the Darda Bieberle case, Case No. 6:14-bk-03020-CCJ (Docket No.: 68), and on July 24,

2014, in the Bieberle Enterprises, Inc. case, Case No. 6:14-bk-01832-CCJ (Docket No.: 49). On December 19, 2104, the Court entered an Order (Docket No.: 83), which conditionally approved the Debtors' Disclosure Statement (the "Disclosure Statement Order"), and scheduled a hearing for February 5, 2015 (the "Confirmation Hearing"), for the Court to consider and rule on the same and to conduct a confirmation hearing with respect to the Debtors' Plan of Reorganization (Docket No.: 81). The Debtors filed an Amended Plan on February 20, 2015 (Docket No.: 129).

The Confirmation Hearing was continued on multiple occasions but ultimately held on October 6, 2015, at which time the Court considered approval of the Disclosure Statement and confirmation of the Plan. At the October 6, 2015, Confirmation Hearing: Elena Escamilla, Esquire, appeared on behalf of the United States Trustee; L. William Porter III, Esquire, appeared on behalf of the Debtors, along with Darda Bieberle, on behalf of himself and corporate Debtor, Bieberle Enterprises, Inc.; Gregg Ahrens, Esquire, appeared on behalf of Seterus, Inc., as authorized subservicer for FNMA, and Venture Trust 2013-1; Vivian Elliot, Esquire, appeared on behalf of First Horizon Home Loans, and JP Morgan Chase, N.A.; Matt Holtsinger, Esquire, appeared on behalf of Wells Fargo Bank, N.A.; and Lorne Durket, Esquire, appeared on behalf of Specialized Loan Servicing, LLC, Fifth Third Bank, Ditech, and Select Portfolio Servicing, Inc.

Also scheduled for hearing on October 6, 2015, in addition to the Plan and Disclosure Statement, were the following items:

1. Motion by Debtor to Use Cash Collateral (Docket No.: 21);

2. Objection by Green Tree Servicing[1] to Plan (Docket No. 95);

---

[1] Assigned to Ditech.

3. Objection by Bank of New York to Plan (Docket No.: 97), Objection by Bank of NY to Plan (Docket No.: 109), Amended Objection by The Bank of NY to Confirmation (Docket No.: 136) (Collectively, the "Bank of New York Objections");

4. Objection by MidFirst Bank to Confirmation (Docket No.: 107), Objection by MidFirst Bank to Plan (Docket No.: 168), Amended Objection by MidFirst Bank to Confirmation of Plan (Docket No.: 169) (Collectively, the "MidFirst Bank Objections");

5. Objections by JPMorgan Chase Bank re: Class 10 to Plan (Docket No.: 112), re: Class 9 to Plan (Docket No.: 113), re: Class 22 to Plan (Docket No.: 114), re: Class 8 to Plan (Docket No.: 115), re: Class 25 to Plan (Docket No.: 116), re: Class 21 to Plan (Docket No.: 117), re: Class 12 to Plan (Docket No.: 118), re: Class 18 to Plan (Docket No.: 119), re: Class 3 to Plan (Docket No.: 120), re: Class 2 to Plan (Docket No.: 121), re: Class 18 to Plan (Docket No.: 151), re: Class 2 to Plan (Docket No.: 152), re: Class 3 to Plan (Docket No.: 154), re: Class 10 to Plan (Docket No.: 155), re: Class 9 to Plan (Docket No.: 156), re: Class 6 to Plan (Docket No.: 157), re: Class 22 to Plan (Docket No.: 158), re: Class 8 to Plan (Docket No.: 159), re: Class 25 to Plan (Docket No.: 160), re: Class 21 to Plan (Docket No.: 161), re: Class 12 to Plan (Docket No.: 162) (Collectively, the "JPMorgan Chase Objections");

6. Objection by Wells Fargo to Plan (Docket No.: 122), Objection by Wells Fargo to Confirmation of Amended Chapter 11 Plan (Docket No.: 180) (Collectively, the Wells Fargo Objections");

7. Objection by First Horizon Home Loans to Confirmation of Plan re: Class 6 4742 Southern Willow Lane, Orlando, Florida (Docket No.: 123), re: Class 5 4736 Southern Willow Lane, Orlando, Florida (Docket No.: 124), re: Class 4 4730 Southern Willow Lane, Orlando, Florida (Docket No.: 125); re: Class 5 to Plan (Docket No.: 150), re: Class 4 to Plan (Docket No.: 153) (Collectively, the "First Horizon Objections");

8. Objection by BSI Financial[2] to Plan (Docket No.: 163) (the "Venture Trust 2013-1 Objection");

9. Objection by Seterus to Plan (Docket No.: 164), Objection by Seterus to Plan (Docket No.: 165), Amended Objection by Seterus to Plan (Docket No.: 184), Amended Objection by Seterus to Plan (Docket No.: 183) (Collectively, the "Seterus Objections");

10. Objection by Fifth Third Bank to Plan (Docket No.: 204);

11. Motion by JPMorgan Chase Bank to Allow Late Filed Claims 22, 23, 24, 25, 26, 27, 28, and 29 (Docket No.: 201);

12. First Application for Compensation for L William Porter III, Debtors' Attorney, Fee: $43,846.00, Expenses: $4,158.97. For the period: February 12, 2014 to April 30, 2015 (Docket No.: 137), Application for Compensation for L William Porter III, Debtors' Attorney, Fee: $43,846.00, Expenses: $4,158.97. For the period: 2/12/2014 through 4/30/2015 (Docket No.: 145) (Collectively, the "BMM Application");

---

[2] Assigned to Venture Trust 2013-1.

After due and sufficient notice to all Creditors, holders of Equity Interests, and interested parties, and after a hearing, the Court, having determined there to be sufficient cause, makes the following findings:

### Findings of Fact

A.    The Disclosure Statement contains "adequate information" within the meaning of 11 U. S. C. § 1125.

B.    Pursuant to the Disclosure Statement Order, the Plan, the Disclosure Statement, along with notice of the confirmation hearing, a ballot, a solicitation letter, and notice of hearing on compensation of professionals, were mailed by the Debtors to all holders of Claims and to all holders of Equity Interests.

C.    The Court held hearings on April 30, 2015, June 25, 2015 and September 17, 2015. The Confirmation Hearing was ultimately held on October 6, 2015.

D.    At the Confirmation Hearing, counsel for the Debtors proffered and presented evidence that the Plan met all requirements under § 1129(a) of the Bankruptcy Code.

E.    Notice to all creditors and parties in interest was sufficient and such notice complied with the applicable bankruptcy rules. The Debtors have acted in good faith in connection with the formulation and negotiation of the Plan and the various documents and agreements related to the Plan and in connection with the negotiation, execution, and implementation of the Plan. Without limiting the foregoing, the Plan has been negotiated and proposed in good faith, at arm's length, and not by any means forbidden by law.

F.    Debtors' execution and consummation of the transactions contemplated by the Plan and the modifications detailed below is appropriate and in the best interests of the Debtors, their

Creditors, the Estate, and all other parties in interest.

G.   Pursuant to 11 U.S.C. § 1123(b)(3) and Fed.R.Bank.P. 9019(a), the Debtor has demonstrated that each of the other compromises and settlements reflected or referenced in the Plan, or announced by record counsel at the Confirmation Hearing, are fair, equitable, reasonable, and proper and are in the best interests of the Debtors' Estate and Creditors and holders of Equity Interests. Accordingly, the Plan is hereby modified as follows:

<u>Class 2 - Secured Claim of Chase Bank Relating to Property at 2463 and 2465 Fielding Court, Orlando, Florida</u>

This loan from Chase Bank (the "First Chase Loan") relates to property located at 2463 and 2465 Fielding Court, Orlando, Florida.  The obligor under the subject loan documents (the "First Chase Loan Documents") is Darda Bieberle, individually. Debtors adopt under the Plan the First Chase Loan Documents except as to the interest rate thereunder, which is currently at 7.125% per annum. Under the Plan, the First Chase Loan interest rate shall be modified and reduced to 5.25% per annum, which shall be the rate governing the First Chase Loan Documents beginning on the Effective Date of the Plan. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the First Chase Loan Documents between the Debtors and Chase Bank as existed pre-Petition. In addition to the monthly payments for principal and interest, if required by the First Chase Loan Documents, Debtors shall make monthly post-confirmation escrow payments for taxes, insurance, and private mortgage insurance, with such escrow payments subject to periodic adjustment in the ordinary course. Finally, Debtors will pay arrears of $18,525.54 in equal monthly payments over sixty (60) months beginning on the Effective Date.

<u>Class 4 - Secured Claim of Nationstar Bank Relating to Property at 4730 Southern Willow Lane, Orlando, Florida</u>

This loan from Nationstar Bank (the "First Nationstar Loan") relates to property located at 4730 Southern Willow Lane, Orlando, Florida.  The obligor under the subject loan documents (the "First Nationstar Loan Documents") is Bieberle Enterprises, Inc. Debtors adopt under the Plan the First Nationstar Loan Documents except as to the interest rate thereunder, which is currently at 8.875% per annum.  Under the Plan, the First Nationstar Loan interest rate shall be modified and reduced to 5.25% per annum, which shall be the rate governing the First Nationstar Loan Documents beginning on the Effective Date of the Plan.  Nationstar Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the First Nationstar Loan Documents between the Debtors and Nationstar Bank as existed

pre-Petition. In addition to the monthly payments for principal and interest Debtors shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course. Finally, Debtors will pay arrears of $6,998.05 in equal monthly payments over sixty (60) months beginning on the Effective Date.

### Class 5 - Secured Claim of Nationstar Bank Relating to Property at 4736 Southern Willow Lane, Orlando, Florida

This loan from Nationstar Bank (the "Second Nationstar Loan") relates to property located at 4736 Southern Willow Lane, Orlando, Florida. The obligor under the subject loan documents (the "Second Nationstar Loan Documents") is Bieberle Enterprises, Inc. Debtors adopt under the Plan the Second Nationstar Loan Documents except as to the interest rate thereunder, which is currently at 8.875% per annum. Under the Plan, the Second Nationstar Loan interest rate shall be modified and reduced to 5.25% per annum, which shall be the rate governing the Second Nationstar Loan Documents beginning on the Effective Date of the Plan. Nationstar Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Second Nationstar Loan Documents between the Debtors and Nationstar Bank as existed pre-Petition. In addition to the monthly payments for principal and interest Debtors shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course. Finally, Debtors will pay arrears of $7,330.17 in equal monthly payments over sixty (60) months beginning on the Effective Date.

### Class 6 - Secured Claim of Nationstar Bank Relating to Property at 4742 Southern Willow Lane, Orlando, Florida

This loan from Nationstar Bank (the "Third Nationstar Loan") relates to property located at 4742 Southern Willow Lane, Orlando, Florida. The obligor under the subject loan documents (the "Third Nationstar Loan Documents") is Bieberle Enterprises, Inc. Debtors adopt under the Plan the Third Nationstar Loan Documents except as to the interest rate thereunder, which is currently at 8.875% per annum. Under the Plan, the Third Nationstar Loan interest rate shall be modified and reduced to 5.25% per annum, which shall be the rate governing the Third Nationstar Loan Documents beginning on the Effective Date of the Plan. Nationstar Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Third Nationstar Loan Documents between the Debtors and Nationstar Bank as existed pre-Petition. In addition to the monthly payments for principal and interest, Debtors shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course. Finally, Debtors will pay arrears of $5,245.59 in equal monthly payments over sixty (60) months beginning on the Effective Date.

### Class 7 - Secured Claim of Ocwen Bank Relating to Property at 4746 Southern Willow Lane, Orlando, Florida

This loan from Ocwen Loan Servicing, LLC, as Servicer for Deutsche Bank Trust Company Americas, as Trustee for Residential Asset Mortgage Products, Inc., Mortgage-Backed Pass-Through Certificates, Series 2004-Sl2 (the "Ocwen Loan") relates to property located at 4746 Southern Willow Lane, Orlando, Florida. The obligor under the subject loan documents (the "Ocwen Loan Documents") is Bieberle Enterprises, Inc. The Ocwen Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Ocwen Loan Modification Agreement") dated in or about August, 2013. Payments under the Ocwen Loan Documents, as modified, are current as of the time of filing of the instant Second Amended Plan. Debtors reaffirm and readopt under the Plan the Ocwen Loan Documents as modified by the Ocwen Loan Modification Agreement except as to the interest rate thereunder, which is currently at 7.00% per annum. Under the Plan, the Ocwen Loan interest rate shall be modified and reduced to 5.25% per annum, which shall be the rate governing the Ocwen Loan Documents, as modified by the Ocwen Loan Modification Agreement, beginning December 1, 2015. Ocwen Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Ocwen Loan Documents, as modified by the Ocwen Loan Modification Agreement, between the Debtors and Ocwen Bank as existed pre-Petition. In addition to the monthly payments for principal and interest, if required by the Ocwen Loan Documents, Debtors shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course.

<u>Class 10 - Secured Claim of Chase Bank Relating to Property at 2833 Bower Road, Winter Park, Florida</u>

This loan from Chase Bank (the "Fifth Chase Loan") relates to property located at 2833 Bower Road, Winter Park, Florida. The obligor under the subject loan documents (the "Fifth Chase Loan Documents") is Bieberle Enterprises, Inc. The Fifth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Fifth Chase Loan Modification Agreement") dated on or about September 18, 2012 with modification effective December 1, 2012. Payments under the Fifth Chase Loan are current as of the time of filing of the instant Second Amended Plan. Debtors reaffirm and readopt under the Plan the Fifth Chase Loan Documents as modified by the Fifth Chase Loan Modification Agreement including the interest rate, which is a step rate of 2.242% for years 1 through 5, 3.242% for year 6, and 3.49% for years 7 through 40. Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Fifth Chase Loan Documents, as modified by the Fifth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition. In addition to the monthly payments for principal and interest, Debtors shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course.\

<u>Class 14 - Secured Claim of Venture Trust 2013-1 Relating to Property at 641 Roughbeard Road, Winter Park, Florida</u>

This loan with Venture Trust 2013-1, serviced by BSI Financial Services (collectively, "BSI") (the "BSI Loan") relates to a first mortgage on the property located at 641 Roughbeard Road, Winter Park, Florida. The obligor under the subject loan documents originally with BankUnited (the "BSI Loan Documents") is Bieberle Enterprises, Inc. Under the Plan, the BSI Loan will be recapitalized and that recapitalized amount, which totals $329,020.28 pursuant to the Amended Proof of Claim filed herein by BSI (Claim No. 3-2 in the Bieberle Enterprises, Inc. case, as amended), will be amortized and paid over forty (40) years at the rate of 5.25% per annum, at a monthly payment of $1,641.38, beginning on the Effective Date. BSI shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority available to BSI under the BSI Loan Documents between the Debtors and BSI (and predecessors in interest) as existed pre-Petition. In addition to said regular monthly payments for principal and interest, Debtors shall pay BSI monthly payments of $348.33 (subject to adjustment including, but not limited to, an increase to reimburse BSI for 2015 taxes) toward escrow for real estate taxes, Additionally, Debtors shall pay directly for insurance relating to the subject property. Taxes advanced by BSI for 2014 of $3,598.00 shall be repaid to BSI in twelve (12) equal monthly payments commencing on the Effective Date, such payments being in addition to the other payments provided herein.

### Class 15 - Secured Claim of FNMA Relating to Property at 2940 Scarlet Road, Winter Park, Florida

This Class relates to the mortgage interest of FNMA (serviced by Seterus, Inc.) in property located at 2940 Scarlet Road, Winter Park, Florida. Under the Plan, the subject loan will be recapitalized and that recapitalized amount, which totals $78,352.01 pursuant to the Proof of Claim filed herein by FNMA/Seterus (Claim No. 5 in the Bieberle Enterprises, Inc. case), will be amortized and paid over thirty (30) years at 5.25% per annum, at a monthly payment of $432.66, beginning on the Effective Date. FNMA shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided by Loan Documents as existed pre-Petition. Debtors shall also pay FNMA for all post petition advances for taxes and insurance as well as accrued post petition interest at the contract rate through the confirmation date, over sixty (60) months, in equal monthly installments. In addition to said regular monthly payments for principal and interest, Debtors shall pay monthly payments of $390.83 (subject to adjustment including, but not limited to, an increase to reimburse FNMA for 2015 taxes) toward escrow for insurance and real estate taxes and insurance. Finally, Debtors will pay arrears of $9,968.37 in equal monthly payments over sixty (60) months beginning on the Effective Date.

### Class 18 - Secured Claim of Chase Bank Relating to Property at 2766 Cady Way Avenue, Winter Park, Florida

This loan from Chase Bank (the "Eighth Chase Loan") relates to property located at 2766 Cady Ave., Winter Park, Florida. The obligor under the subject loan documents (the "Eighth Chase Loan Documents") is Bieberle Enterprises, Inc. The Eighth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement

(the "Eighth Chase Loan Modification Agreement") dated on or about December 24, 2012, with an effective date of March 1, 2013. Debtors reaffirm and readopt under the Plan the Eighth Chase Loan Documents as modified by the Eighth Chase Loan Modification Agreement, including step rate of 2.814% for years 1 through 5 and 3.37% for years 6-40 per annum.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Eighth Chase Loan Documents, as modified by the Eighth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition. In addition to monthly payments for principal and interest, Debtors shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course. Finally, Debtors will pay arrears of $7,462.51 in equal monthly payments over sixty (60) months beginning on the Effective Date.

### Class 19 - Secured Claim of FNMA Relating to Property at 1773 Walnut Avenue, Winter Park, Florida

This Class relates to the mortgage interest of FNMA (serviced by Seterus, Inc.) in property located at 1773 Walnut Avenue, Winter Park, Florida.  Under the Plan, the subject loan will be recapitalized and that recapitalized amount, which totals $108,589.10 pursuant to the Proof of Claim filed herein by FNMA/Seterus (Claim No. 6 in the Bieberle Enterprises, Inc. case), will be amortized and paid over thirty (30) years at the rate of 5.25% per annum at a monthly payment of $599.63, beginning on the Effective Date. FNMA shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided by Loan Documents as existed pre-Petition. In addition to said regular monthly payments for principal and interest, Debtors shall pay monthly payments of $577.77 (subject to adjustment including, but not limited to, an increase to reimburse FNMA for 2015 taxes) toward escrow going forward for real estate taxes and insurance. Additionally, Debtors will pay arrears of $19,516.88 in equal monthly payments over sixty (60) months beginning on the Effective Date.

### Class 21 - Secured Claim of Chase Bank Relating to Property at 1725 Aloma Avenue, Winter Park, Florida

This loan from Chase Bank (the "Tenth Chase Loan") relates to property located at 1725 Aloma Avenue, Winter Park, Florida. The obligor under the subject loan documents (the "Tenth Chase Loan Documents") is Bieberle Enterprises, Inc. The Tenth Chase Loan has been modified by the parties pursuant to that certain Modification Agreement (the "Tenth Chase Loan Modification Agreement") dated on or about January 2013. Payments under the Tenth Chase Loan Documents, as modified, are current. Debtors reaffirm and readopt under the Plan the Tenth Chase Loan Documents as modified by the Tenth Chase Loan Modification Agreement except as to the interest rate thereunder, which is currently at 6.50% per annum.  Under the Plan, the Tenth Chase Loan interest rate shall be modified and reduced to 5.25% per annum, which shall be the rate governing the Tenth Chase Loan Documents, as modified by the Tenth Chase Loan Modification Agreement, beginning on the Effective Date of the Plan.  Chase Bank shall retain any and all liens it has against the aforesaid real property to the same extent,

validity and priority provided in the Tenth Chase Loan Documents, as modified by the Tenth Chase Loan Modification Agreement, between the Debtors and Chase Bank as existed pre-Petition. In addition to the monthly payments for principal and interest, the Debtor shall make monthly post-confirmation escrow payments for taxes, insurance, and private mortgage insurance with such escrow payments subject to periodic adjustment in the ordinary course.

### Class 24 - Secured Claim of SLS Relating to Property at 2618 Lafayette Avenue, Winter Park, Florida

Specialized Loan Servicing ("SLS") filed Proof of Claim 4-1 (the "Proof of Claim") that relates to property located at 2618 Lafayette Avenue, Winter Park, Florida. The obligor under the subject loan documents (the "SLS Loan Documents") is Darda Bieberle, individually. The SLS Loan Documents have been modified by SLS's predecessor and Darda Bieberle pursuant to that certain Modification Agreement (the "SLS Loan Modification Agreement") a copy of the SLS Loan Modification Agreement is attached as an exhibit to SLS's Proof of Claim and is incorporated herein by reference. SLS and Debtor readopt under the Plan the SLS Loan Documents as modified by the SLS Loan Modification Agreement, including the interest rate thereunder of 4.75% per annum, and will make normal monthly payments beginning on the Effective Date. SLS shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the SLS Loan Documents, as modified by the SLS Loan Modification Agreement, between the Debtors and SLS as existed pre-Petition. In addition to the monthly payments for principal and interest, the Debtors shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course, SLS shall be allowed to send any and all notices regarding changes in the monthly payment amount due to periodic adjustments in the escrow payment and notices regarding the loan account directly to Debtors. Finally, Debtors will pay post-petition past due payments and escrow advances in the amount of $9,882.27 in monthly payments over twelve (12) months in equal monthly installments in the amount of $844.86 beginning on the Effective Date.

### Class 30 - Secured Claim of $5^{th}/3^{rd}$ Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida

Fifth Third Bank (the "$5^{th}/3^{rd}$") filed Proof of Claim 10-1 in Darda Bieberle individual bankruptcy case 14-bk-03020-CCJ that relates to a second mortgage on the property located at 2606 Mandan Trail, Winter Park, Florida. The obligor under the subject loan documents (the "$5^{th}/3^{rd}$ Loan Documents") is Darda Bieberle, individually. Debtors adopt under the Plan the Loan Documents, a copy of which was attached to $5^{th}/3^{rd}$'s Proof of Claim as an exhibit and is incorporated herein by reference, which includes a variable annual interest rate currently in the amount of 4.00%. $5^{th}/3^{rd}$ shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Loan Documents between the Debtors and $5^{th}/3^{rd}$ as existed pre-Petition. In addition to the monthly payments for principal and interest, the

Debtors shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course. Finally, Debtors will pay arrears of $8,979.06 in monthly payments of $764.57 over twelve (12) months beginning on the Effective Date.

### Class 31 - Secured Claim of Wells Fargo Bank Relating to Property at 2606 Mandan Trail, Winter Park, Florida

This loan from Wells Fargo Bank (the "Sixth Wells Fargo Loan") relates to a third mortgage on the property located at 2606 Mandan Trail, Winter Park, Florida. The obligor under the subject loan documents (the "Sixth Wells Fargo Loan Documents") is Darda Bieberle, individually. Debtors adopt under the Plan the Sixth Wells Fargo Loan Documents, including the variable interest rate thereunder of 4.85% per annum. Wells Fargo Bank shall retain any and all liens it has against the aforesaid real property to the same extent, validity and priority provided in the Sixth Wells Fargo Loan Documents between the Debtors and Wells Fargo Bank as existed pre-Petition. Debtors shall make regular monthly payments required under the Sixth Wells Fargo Loan Documents which are presently $1,023.10 per month. The regular monthly payments shall commence as of the effective date of the Plan. In addition to said regular monthly payments for principal and interest, if required by the Sixth Wells Fargo Loan Documents, Debtors shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course. The payments shall also be subject to periodic adjustment for interest rate changes as provided in the Loan Documents. Finally, Debtors will pay the accumulated arrears of $21,485.10 in monthly payments over sixty (60) months beginning on the Effective Date. These arrearages consist of prepetition arrears of $3,069.30 as set forth in the Creditor's proof of claim and post-petition arrears of $18,415.80 representing the payments from the date of filing through and including the Effective Date of the Plan.

### Class 32 - Secured Claim of GreenTree Relating to Property at 2666 Fitzhugh Road, Winter Park, Florida

This loan currently held by GreenTree Servicing (the "GreenTree Loan") relates to property located at 2666 Fitzhugh Road, Winter Park, Florida. The obligor under the subject loan documents (the "GreenTree Loan Documents"), and the party in whose name title to the subject property currently rests, is Darda Bieberle's mother, Henrietta Bieberle, who has since passed away. The property is the subject of a foreclosure proceeding in the case styled as: *Bank of America v. Unknown Spouses, Heirs claiming against Henrietta J. Bieberle, et al.*, Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, Case No. 2011-CA-017461-O. However, as an heir, Darda Bieberle has an interest in the subject property that may be treated under the herein Plan. Payments under the GreenTree Loan are delinquent and no modification agreement is in place. Under the Plan, the GreenTree Loan will be recapitalized and that recapitalized amount, which totals $167,702.50 based upon GreenTree's Proof of Claim, will be amortized over thirty (30) years at 5.25% per annum, at a month payment of $926.06, beginning on the Effective Date. GreenTree shall retain any and all liens it has against the

aforesaid real property to the same extent, validity and priority provided in the GreenTree Loan Documents between the Debtors and GreenTree (or its predecessor) as existed pre-Petition. In addition to the monthly payments for principal and interest, the Debtor shall make monthly post-confirmation escrow payments for taxes and insurance, with such escrow payments subject to periodic adjustment in the ordinary course. Finally, Debtors will pay arrears of $23,070.37 in monthly payments over sixty (60) months beginning on the Effective Date.

H. The Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under 11 U.S.C. § 1129. Specifically, but without intending to limit the foregoing, the Court finds that the intended treatment under Class 13 - Secured Claim of Wells Fargo Bank Relating to Property at 129 Cornwall Road, Winter Park, Florida, Class 17 - Secured Claim of Ocwen Bank Relating to Property at 222 Ranger Avenue, Winter Park, Florida, Class 23 - Secured Claim of Citibank Relating to Property at 3800 Sea Island Court, Orlando, Florida, and Class 28 - Secured Claim of Carrington Mortgage Relating to Property at 2606 Mandan Trail, Winter Park, Florida, are fair and equitable to each of the aforesaid parties.

Accordingly, it is

ORDERED, ADJUDGED, AND DECREED as follows:

1. As a result of any modifications incorporated in this Confirmation Order and as a result of the rulings of this Court, and as announced by the attorneys appearing at the Confirmation Hearing, the following objections to confirmation are deemed withdrawn and each of the below-listed parties, stated their support of confirmation of the Plan: (1) Objection by Green Tree Servicing[3] to Plan (Docket No. 95); (2) the Bank of New York Objections; (3) the MidFirst Bank Objections; (4) the JPMorgan Chase Objections; (5) the Wells Fargo Objections; (6) the First Horizon Objections; (7) the Venture Trust 2013-1 Objection; (8) the Seterus Objections;

---

[3] Assigned to Ditech.

and, (9) the Objection by Fifth Third Bank to Plan (Docket No.: 204);

2. Any confirmation objections not specifically dealt with hereinabove are overruled.

3. The Motion by Debtor to Use Cash Collateral (Docket No.: 21) is denied as moot.

4. The following motions are granted: (1) Motion by JPMorgan Chase Bank to Allow Late Filed Claims 22, 23, 24, 25, 26, 27, 28, and 29 (Docket No.: 201); and, (2) the BMM Application.

5. The Disclosure Statement is approved.

6. The Plan is confirmed in all respects, as modified herein. A copy of the Plan is attached hereto as **Exhibit "A."** The Effective Date under the Plan is November 1, 2015.

7. The Corporate Debtor and its officers, directors, agents, attorneys and authorized representatives are authorized, empowered and directed, subject to the conditions set forth in the Plan, to take all such steps as may be necessary to effectuate and implement the Plan, including, without limitation, the execution and delivery of all instruments of transfer and other documents necessary to implement the Plan and the transactions contemplated thereby and the various other documents, agreements, and instruments contemplated by the Plan and the various settlements, agreements, and compromises referenced in the Plan, including without limitation, any modifications, amendments, addenda, loan documents, deeds and corrective deeds relating to the properties that are the subject of the Plan.

8. Pursuant to § 1146(c) of the Bankruptcy Code, the making or delivery of any deeds, instrument or instruments of note, mortgage, lien, or encumbrance, including, without limitation – (a) any transfers hereafter made in consummation of, or heretofore made in anticipation of the Confirmation and consummation of the Plan and Amendment, including but not limited to any and all deeds, promissory notes, mortgages, financing statements, and security

agreements – shall not be taxed under any law imposing any recording, registration, or stamp tax or fee, or any similar tax or fee, including any applicable transfer taxes or fees and mortgage recording taxes or other fees.

9. Pursuant to § 1146(c) of the Bankruptcy Code, all filing or recording officers shall be, and hereby are, directed to accept from the Debtors or the Reorganized Debtors, and each of their respective agents and attorneys for recording and shall record such documents and instruments: (i) which may be required to effectuate any provision of the Plan and Amendment, (ii) which may be required to effectuate the imposition, continuation, or refinance of any lien or mortgage, and (iii) as are customarily recorded in connection with commercial or real estate transactions in Florida, immediately upon presentation thereof at any time after the date of this Confirmation Order, unconditionally and without reservation, without the presentation of any affidavits, instruments, or returns otherwise required for recording or filing and without the assessment or payment of any stamp tax, transfer tax or similar tax imposed by any state, local, or other law.

10. Except as otherwise provided herein, upon the Effective Date, (i) any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the Debtors with respect to any debt discharged by this Confirmation Order, shall hereby be made null and void and (ii) the commencement or continuation of any action, the employment of process, or any act, to collect, recover or offset any debt, Claim or Interest discharged by this Confirmation Order as a personal liability of the Debtors, shall hereby be forever enjoined. Each holder of any Claim or Interest against the Reorganized Debtors shall be enjoined permanently from taking any action against the Reorganized Debtors to litigate, recover, enforce, adjudicate, collect, offset, levy upon or otherwise realize upon or obtain any relief with respect to any Claim

or Interest, other than as expressly provided in the Plan, as modified herein.

11. The provisions of the Plan, as modified by this Confirmation Order, shall be, and they hereby are, binding on the Debtors, each holder of a Claim or Interest against any Debtors and each other party in interest in this Chapter 11 case, whether or not the Claim or Interest is impaired under the Plan and whether or not the holder of such Claim or Interest has accepted the Plan.

12. The provisions of the Plan, as modified by this Confirmation Order, shall be, and they hereby are, binding on any person or entity that may in the future bring a claim against the Debtors, or their successors, for obligations arising before the execution of this Confirmation Order.

13. All settlements, agreements, and compromises provided for under the Plan, and all transactions, documents, instruments, and agreements referred to therein, contemplated thereunder or executed and delivered therewith, and any amendments or modifications thereto in substantial conformity therewith, are hereby approved, and the Debtors and the other parties thereto are authorized and directed to enter into them and to perform thereunder according to their respective terms.

14. The Plan, as modified by this Confirmation Order, is confirmed in its entirety as if set forth *in haec verb*a. The inclusion of decretal paragraphs in this Confirmation Order referring to specific provisions of the Plan or authorizing specific action by the Debtors shall not be construed to imply non-approval of other provisions or non-authorization of other actions.

15. The reorganized Debtors shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as this Bankruptcy Court enters a final decree closing these Chapter 11 cases, or enters an order either converting these cases to cases

under Chapter 7 or dismissing same. After confirmation, pursuant to 11 U.S.C. § 1106(a)(7) and Bankruptcy Rule 2015(a)(5), the reorganized Debtors shall file with the Bankruptcy Court and shall serve on the United States Trustee a financial report or statement of disbursements for each quarter (or portion thereof) that these Chapter 11 cases remain open, in a format prescribed by the United States Trustee.

16. On the Effective Date of the Plan, the Debtors shall pay all quarterly fees due and owing to the United States Trustee through the Effective Date.

17. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, until the entry of the Final Decree, this Court shall retain jurisdiction of this case for purposes of the administration of the case, including that necessary to ensure that the purposes and intent of the Plan are effectuated, including but not limited to, the jurisdiction to determine all objections that have heretofore been or may be filed to claims of creditors herein; to fix and award all compensation to parties who may be so entitled; to hear and determine all questions concerning the assets or property of the Debtors, including any questions relating to any sums of money, services, or property due to the Debtors; and determine all matters of any nature or type necessary or appropriate to implement the Plan, including without limitation, all rights and remedies of Lender thereunder.

18. Notice of the entry of this Confirmation Order shall be adequate if served on all Creditors, holders of Equity Interests and parties in interest in this case in accordance with Bankruptcy Rule 2002(f)(7).

19. In the event the Debtors fail to follow the provisions of Local Rule 3022-1, the Debtors shall file a report within ninety (90) days from the date of this Order of Confirmation,

setting forth the progress made in consummating the Plan. The report shall include: (1) a statement of distribution by class, name of creditor, date of distribution, and amount paid; (2) a statement of transfer of property; and (3) a statement of affirmation that the Debtors have substantially complied with the provisions of the confirmed Plan.

20. The Debtors shall continue to pay all fees due and owing to the United States Trustee until the entry of a Final Decree.

21. Confirmation of this plan as it relates to Darda Bieberle's individual Chapter 11 not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan, or as otherwise provided in 11 U.S.C. § 1141(d)(5) of the Bankruptcy Code. Darda Bieberle will not be discharged from any debt excepted from discharge under 11 U.S.C. § 523 of the Code, except provided in Fed. R. Bankr. P. 4007(c).

22. Once the Debtors' estates have been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtors shall file a motion with the Bankruptcy Court to obtain a final decree to close the cases. Alternatively, the Court may enter such a final decree on its own motion.

23. The Court may in its discretion, upon motion and after notice and hearing, administratively close these cases without entry of a discharge before all of the plan payments have been made. Upon completion of all payments under the Plan, or as otherwise available to the Debtors under 11 U.S.C. § 1141(d)(5)(B) of the Bankruptcy Code, the Debtor may to file a Motion to Reopen the Case for the limited purpose of obtaining a Discharge.

24. Within three (3) business days following entry of this Order, counsel for the Debtors shall serve a copy of this Order upon all interested parties, using a current matrix provided by the Clerk of the Court, and promptly file a certificate of service.

25. The Debtors are authorized to record a copy of this Order in any counties where property that is subject to the terms of the Plan is situated.